# CHARLES H. MARTIN

## *vs.*

# W. W. LANAHAN & COMPANY.

*Trover: conversion; definition; no evidence.   Repudiation of acts of agent: reasonable time.*

An action of trover can not be maintained without a conversion.                                              p. 527

The conversion may either be direct or constructive, and may be proved directly or by inference.                p. 527

When actual conversion is not proved, the plaintiff must give evidence of a demand and a refusal, made at a time when the defendant had power to give up the goods.        p. 527

But demand and refusal are only evidence of a prior conversion, and may be explained and rebutted by evidence to the contrary.                                      pp. 527-528

Conversion, in the sense of the law of trover, consists in the appropriation of the property of another, or its destruction, or the exercise of dominion over it in defiance of the owner's right, or in withholding the possession from him, under an adverse claim of title, and all who aid or participate in such unlawful acts are liable.                            p. 528

For a principal to avoid the unauthorized act of an agent he need not repudiate it immediately; it is sufficient if the repudiation be in a reasonable time; what is such reasonable time is a question for the jury.                          p. 534

In many instances, the question of conversion *vel non* is one of fact for the jury, under all the facts of the case, under proper instructions.                                  p. 534

But where there is no evidence of any conversion, it is the duty of the court to withdraw the case from the jury.    p. 534

M. ordered L. & Co., stockbrokers, to exchange certain shares they were carrying for him for shares in a reorganized company, and deliver same in satisfaction of a contract for sale of stock in the new company which they had made for him; they exchanged the old stock for trust company receipts, which were not a good delivery in performance of the contract for sale of stock in the new company; *held,* there was no evidence of such a conversion as would support an action of trover.        p. 534

*Decided January 15th, 1919.*

Two appeals from the Superior Court of Baltimore City. (GORTER, J.)

The facts are stated in the opinion of the Court.

The causes were argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Raymond S. Williams* and *Arthur W. Machen, Jr.,* (with whom were *Maloy* and *Brady* on the brief), for the appellant.

*Frank Gosnell* (with a brief by *Marbury, Gosnell & Williams*), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

On the 6th day of September, 1917, Charles H. Martin sued the firm of W. W. Lanahan & Co. in the Court of Common Pleas of Baltimore City, and on the same day W. W. Lanahan & Co. brought suit against Charles H. Martin in the Superior Court of Baltimore City.

In the first case the alleged cause of action was a conversion by the defendants of fifty shares of the capital stock of the Chalmers Motor Company and the plaintiff claimed to be entitled to recover damages for such alleged conversion.

In the second case the suit was upon the common counts for a balance found to be due to the plaintiffs of several thou-

sand dollars as the result of certain transactions between the parties.

The two cases were tried together by agreement, inasmuch as the main and controlling difference between the parties grew out of one and the same transaction. At the trial of the suit in trover the Court directed a verdict in favor of the defendants, and when this result was reached it necessarily followed that in the suit in assumpsit the verdict should be in favor of the plaintiffs. There was no difference between the parties as to the amount due, provided Martin was not entitled to recover damages in the action in trover. Judgment was accordingly entered in the action in assumpsit in favor of the plaintiffs for $3,956.02. From these two judgments Martin has taken these appeals. The cases were argued together in this Court. During the progress of the trial in the suit in trover twelve exceptions were reserved on behalf of Martin, and by agreement of counsel the same exceptions are to be regarded as having been taken in each of the cases.

The first and controlling question in these cases is, whether there had been a conversion by Lanahan & Co. as averred in the declaration in the suit brought in the Court of Common Pleas. To answer this it is first requisite to understand clearly what constitutes conversion, and then to ascertain whether the facts as testified to make out a case of conversion or not.

Numerous authorities have been cited by the appellant, as to what constitutes conversion, but in none of them is it any more clearly stated than in the case of *Dietus* v. *Fuss,* 8 Md. 148, and re-affirmed in *Hammond* v. *DuBois,* 131 Md., at p. 151, in both of which it is said: "The action of trover can not be maintained without a conversion. It may be either direct or constructive, and, therefore, may be proved directly or by inference. When the plaintiff fails in proving an actual conversion, it will be necessary for him to give evidence of a demand and refusal having been made at a time when the defendant had the power to give up the goods. A demand and refusal are only evidence of a prior conversion

which may be explained and rebutted by evidence to the contrary."

In the case of *Manning* v. *Brown*, 47 Md. 506, JUDGE ALVEY, commenting upon the evidence in that case, makes this further addition to the definition of conversion. He says: "There is no evidence whatever of any intention on the part of the defendants to take to themselves the property in the goods, or in any manner to deprive the plaintiff of them. To entitle him to recover on the count in trover, such proof would have been required."

The same rule is clearly stated by JUDGE BURKE in the recent case of the *Merchants Bank* v. *Williams*, 110 Md. 334, when he said: "Conversion in the sense of the law of trover consists either in the appropriation of the property of another, or in its destruction, or in exercising dominion over it in defiance of the owner's rights, or in withholding the possession from him under an adverse claim of title, and all who aid, command, assist or participate in the commission of such unlawful acts are liable."

In view of these clearly enunciated principles of what constitutes conversion, as a basis for an action of trover, it is now in order to examine the salient facts of this case, and ascertain how far they go to come within the application of these principles.

On the 13th of October, 1916, Martin requested the firm of *Lanahan & Co.* to receive fifty shares of Chalmers Motor Company common stock, pay to Near & Co. $6,500, the purchase price for the same, to charge that amount to his account and to carry the stock for him. On the same day Martin was advised that the appellee had paid Near & Co.'s draft for the amount named, charged the same to his account, and that they would carry the stock for him. The stock which Martin had bought at 130, sold down to a half point below par by the 17th of October.

About ten days later Martin testifies that in talking with Mr. Ensor, an employee of the appellees, he was told that

their firm had had an inquiry from Hornblower and Weeks, of New York, inquiring whether he wished to sell his stock. By that time the price of the stock had rallied somewhat, and was in the vicinity of $120, but Martin told Mr. Ensor that he was disposed to hold on a little longer.

According to the witness' calculations, the stock which he had bought, then had a book value of about 140, and early in November the appellant saw an article in the Wall Street Journal, to the effect that a new company was to be formed, which would take over the stock of the Chalmers Motor Company, and give four shares of the new for one share of the old.

Martin also speaks of a circular which he saw, according to which the book value of the new stock was $29, or for the four shares $116, which he would receive for what cost him $130 per share. Again Mr. Martin had a talk with Mr. Ensor, in which he asked if the latter could get him "200 shares of the stock for the 50 old I had and deliver it. He told me that 'it would be all right.' I think the market started at 35, but I am not sure; but I told him to sell the 200 shares and he did sell. He told me he had gotten an order and he told me he had gotten $33.50 a share for it."

The note reporting the sale, which Martin received from Lanahan & Co., under date of November 9th, showed a sale as of that date of 200 shares of the Chalmers Motor Corporation, the name given to the new company. Upon the receipt of this Mr. Martin did not attempt to disavow the sale shown to have been made, but did find some fault with the fact that only four shares of the new were issued for one of the old, and he accordingly on that day wrote a letter to Mr. Chalmers, the president of the old company, in which the sole burden of his complaint was to the effect that the holders of the stock of the old company ought to receive more than four shares for one.

A few days after this Mr. Martin got his counsel to write to Mr. Chalmers about an exchange at 5 to 1, rather than

4 to 1. Up to this time it does not clearly appear that either Lanahan or Martin had any knowledge of anything to put them upon inquiry, that there was anything in connection with the proposed exchange, except the cancellation of the certificates of the old corporation, and the issuing of certificates of stock in the new. Thus far in the transaction both parties were apparently unaware that in the case of stock of the one corporation exchanged for that of the other, it was to be on a basis of "if, as and when issued". Or if either party did have knowledge of this fact no attention apparently was given to the language as affecting the deal, either by Martin or Lanahan & Co.

The words "if, as and when issued," have a peculiar significance in this case, for the reason that a certain amount of the stock of the new company was not issued by way of exchange for old stock, but was to be disposed of to an underwriting syndicate, which was to place the same upon the market at 35, and as is common in stock transactions of this sort, the exchanged stock was not to be issued until the lapse of a certain amount of time, to enable the members of the underwriting syndicate to unload the stock taken by them. This syndicate stock, which was paid for in cash, immediately received certificates of the stock, while that which was to be issued by way of exchange would not be issued until the time had elapsed which had been agreed upon between the underwriting syndicate and the new corporation. Comparatively little of the stock of the new company was so issued, only about 2,000 shares out of an authorized issue of 600,000.

On the 9th of November Martin had directed Lanahan & Co. to sell 200 shares of the stock of the Chalmers Motor Corporation, the new company, and this order having been given without qualifying words was of course applicable only to issued stock of the new corporation, it being apparently Martin's idea that he could make delivery of the stock sold, by the stock which he would receive in exchange for his stock in the old corporation.

On the 10th of November Lanahan & Co., at the request of Martin, sent an inquiry to Hornblower & Weeks, as to the latest date on which an exchange of the old stock for the new could be effected, and received a reply under date of November 14th, that no date had been set when the company would stop exchanging old securities for the new.

From the fact of this inquiry being made one of two results must follow: either Martin regarded the exchange as already made, by virtue of which he was entitled to 200 shares of the stock of the new company, or else he still owned, subject to the advances made by Lanahan & Co., the 50 shares of old stock originally purchased by him. If the latter, then there had been up to that date no possibility of anything like a conversion of the stock by Lanahan & Co.; and if the former, it had been done with the full knowledge and apparent approval by Martin of the exchange, and yet about that time Mr. Martin stated to his counsel, when advised of the receipt by the latter of a letter from Mr. Chalmers, that it "didn't make any difference to me for I was out of the Chalmers Motor Corporation entirely."

Counsel for Martin has argued strenuously in this case that, for a principal to be bound by the acts of his agent, if there had not been previously delegated authority, it was necessary to show that the principal had subsequently ratified and adopted the act of his agent, and that to render such ratification and adoption effectual it was essential that the principal should have had knowledge of all the previous facts. This is undoubtedly a correct statement of the abstract legal principle. *Bannon* v. *Warfield*, 42 Md. 22; *Taliaferro* v. *Bank*, 71 Md. 218. But the difficulty of applying that principle in this case lies in the fact that there is nothing whatever to show that Martin did not have all of the knowledge which was possessed or enjoyed by Lanahan & Co., his agent. There is nothing indicative of any concealment or misrepresentation on the part of Lanahan & Co.

On the 27th of November, at the instance of Martin, Lanahan & Co. instructed Hornblower & Weeks to exchange the 50 shares of the old, for 200 shares of the new, or as Martin expressed it, "I told Mr. Ensor to get that stock and make delivery." The only delivery which Martin was under any obligation to make was 200 shares of the stock of the new company which he had sold on November 9th, therefore, his instruction to Mr. Ensor was a positive direction to effect the exchange.

On December 23rd Lanahan & Co., apparently at the suggestion of Martin, wrote Hornblower & Weeks with regard to the matter, and the burden of the inquiry seems to have been, as to what would become of the dividend, if any, on the Chalmers stock in which Martin was interested. He then, for the first time apparently, seems to have awakened to the fact that he was not entitled to receive stock certificates for his 200 shares until the middle of April, and in the meantime was liable to be required to make delivery at any time of the 200 shares which he had sold on November 9th. He accordingly, to cover himself, went into the market to purchase 200 shares of the new company's stock already issued, and then to make a delivery in accordance with his previous sale. He succeeded in buying the 200 shares required at 31, thus clearing on this transaction $400. That then left him with 200 shares of the Chalmers Motor Corporation, or rather the Trust Company's certificate for that amount, the stock certificates for which would not be deliverable until April.

Up to this time there had been no disavowal or repudiation of the action of his brokers, although there had been an interval of six months since his original purchase of Chalmers Motor Company stock, and five months from his correspondence with the officers of the company in regard to the terms of the exchange.

In December, 1916, by reason of the decline in value of the Chalmers Motor stock, a call was made on Martin for

additional margin, and this he first proposed to meet by the giving of notes, and subsequently arranged to make a certain cash payment, to be followed by monthly payments thereafter; which were continued down to and including the month of June, 1917.

In July, for the first time, he seemed to have conceived the idea that he had been deprived of his stock by the action of his brokers, and, therefore, was entitled to recover in trover damages for their alleged wrongful act. This was more than six months after he had become fully acquainted with all of the facts.

It appears that monthly statements were rendered by Lanahan & Co. to Martin, and copies of those statements down to July 1st, 1917, are embodied in the Record, and in every instance among the securities of Martin held by Lanahan & Co. as collateral for advances made, appears the "Chalmers Motor Co."

There is nothing, therefore, in the evidence tending to show in any way "any intention on the part of the defendant either to take himself the property in the goods, or in any manner to deprive the plaintiff of them," and in the language of JUDGE ALVEY, to entitle him to recover on the count in trover, such proof would have been required. Or to apply the language used by JUDGE BURKE, in the *Merchants Bank* v. *Williams, supra,* "there is nothing tending to show either the appropriation of the property of another or its destruction, or in exercising dominion over it in defiance of the owner's right, or in withholding the possession from him under an adverse claim of title."

Eleven exceptions were reserved to the evidence during the progress of the trial, and while in some instances the rulings were extremely close, and possibly erroneous as to the immediate question involved, yet none of them materially affected the result of the case so that prejudicial error can be ascribed to them, and it is not, therefore, requisite to consider them in detail.

At the conclusion of the evidence Martin offered ten prayers in the case in trover, and Lanahan & Co. ten prayers, all of which were refused, with the exception of the defendant's third prayer, which was granted, and in the suit on the common counts, Lanahan & Co. offered an additional prayer.

It does not seem necessary to review these several prayers, further than to say, that there was error in the refusal of the defendants', Lanahan & Co.'s, first prayer, which should have been granted, instructing the jury that there was no evidence legally sufficient to show that Lanahan & Co. had converted to their own use the 50 shares of the stock of the Chalmers Motor Co. belonging to Martin.

Several of the other prayers were defective for one reason or another, as for example, the third prayer of Lanahan & Co., which required the jury to find that Martin had *immediately* repudiated the action of his broker. While a few cases have gone to this extent, the case of *Bostain* v. *The DeLaval Co.,* 92 Md. 483, shows that the rule as adopted in this State does not exact an immediate repudiation of an unauthorized deal, but only a repudiation within a reasonable time, which reasonable time is a matter to be found by the jury.

So also in many instances the question of a conversion *vel non* is a question of fact for the jury, and where there is any evidence tending to support the theory of conversion, that fact is also one to be found by the jury under proper instructions; but where, as in the present case, there is a complete absence of any evidence in any way tending to support the theory of conversion, as defined by the adjudicated cases, it is the plain duty of the Court to withdraw the case from the jury's consideration.

The errors suggested could not have operated in any way to the prejudice of Martin, and, therefore, the judgments appealed from will be affirmed.

*Judgments in Nos. 62 and 63 affirmed; the appellant to pay the costs.*