# B. E. WELLBERG v. DULUTH AUTO SUPPLY COMPANY.[1]

## May 21, 1920.

## No. 21,723.

**Sale — conversion of chattel after return to seller.**

1. If the vendor of an automobile, sold with a warranty, obtains it from the vendee and, to fulfil the warranty, entrusts it to another to replace defective parts, and it is wrongfully destroyed or its identity changed, the vendor may be held for conversion.

**Election of remedies by buyer.**

2. An action of assumpsit for a breach of a contract of bailment, or one on the case for a neglect of duty whereby the subject of the bailment is lost, is not the only remedy of the bailor, if the property is converted by the bailee or his agent.

**Trover and conversion — prima facie case.**

3. By showing that a bailee had control of and refused, or unreasonably neglected, to return the property when its return was demanded by the bailor, a prima facie case of conversion is made out.

**Sale — estoppel against seller from questioning authority of agent.**

4. A principal, who sends his agent to negotiate for the adjustment of his alleged liability on a contract of sale, is estopped from questioning the agent's authority to make an agreement under which the principal gets possession of the property sold in order that he may fulfil his contract.

**Measure of damages.**

5. In an action of conversion, where the property, while in the possession of the defendant's agent, was in part carried away or lost either by the wilful act or negligence of the agent, the measure of damages is the value of the property as it was when defendant received it, and not its value at the time defendant offered to return it.

**Evidence of conversion sufficient.**

6. There were no errors in the admission of evidence or in the instructions of the court, and the evidence was sufficient to justify the jury in finding that defendant had converted plaintiff's automobile to its own use.

[1] Reported in 177 N. W. 924.

Action for conversion in the dictrict court for St. Louis county and to recover $950, the value of the property converted. The case was tried before Cant, J., who denied defendant's motion to direct a verdict in its favor, and a jury which returned a verdict for $918. From an order denying its motion for judgment notwithstanding the verdict and denying its motion for a new trial in case plaintiff consented to a reduction of the verdict to $700, defendant appealed. Affirmed.

*John & John D. Jenswold,* for appellant.

*Andrew Nelson* and *John Cedergren,* for respondent.

LEES, C.

In December, 1917, defendant sold an automobile to plaintiff for $1,750. It was one of five which defendant had purchased from the Jones Motor Car Company of Wichita, Kansas. After purchasing the car, plaintiff discovered that he could not start the motor. Ineffectual attempts to start it were made by defendant's employees, and one of them finally told plaintiff that the trouble was due to the motor and that a new motor and starter would be placed in the car. Defendant obtained from the Jones Company a promise to replace the motors and starters in the five cars it had sold to it with others of a different type of construction. It appears that this promise was not kept. Plaintiff finally employed an attorney, who called upon defendant to put the car in such condition that it could be used. On March 26, 1918, one Beard, then a salesman for defendant, accompanied by one Ringsrud, went to the office of plaintiff's attorney and proposed to take plaintiff's car to Minneapolis for the purpose of installing a new motor and starter. Ringsrud was the president of the Jones Northwest Motor Car Company, located at Minneapolis, and the distributor of the Jones car in this state. The proposition was accepted. Plaintiff's attorney testified that the car was to be turned over to defendant, and the work done and the car returned to plaintiff within two weeks. He informed plaintiff of the agreement and advised him to give up possession of his car for the purpose above mentioned. On the same day Beard and Ringsrud went to plaintiff's place of business and got the car, and on the following day Beard drove it to Minneapolis and delivered it to the Jones Company. It remained there from that time until February, 1919. During

the interval, the Jones Company was frequently requested by the plaintiff and by the defendant to have the new motor and starter installed and to return the car, but it was never done. On the contrary, the motor was removed, and the wheels, doors, radiator, fenders and other parts of the car were carried away. The Jones Company has failed and its officers have left Minneapolis.

In the summer of 1918 plaintiff commenced an action against defendant for damages for a breach of warranty in the sale of the car and recovered a verdict of $840, which was paid.

On December 2, 1918, he made a written demand on defendant for the return of the car. It was not complied with, but after this action was brought defendant offered to return the remains of the car. Plaintiff refused to receive it. There was testimony that defendant's president, one Whiteside, stated, in response to the demand, that plaintiff would be lucky if he got his car back, and that defendant was not bound to get it back for him. This action was brought to recover the value of the car, on the theory that defendant had converted it to its own use. Plaintiff had a verdict of $918, subsequently reduced by the trial court to $700. Plaintiff consented to the reduction. Defendant moved for judgment notwithstanding the verdict or for a new trial, and appeals from the denial of its blended motion.

1. Defendant's first contention is that the evidence conclusively shows that plaintiff delivered the car to the Jones Company and that his sole right of action is against that company. It cannot be sustained. The testimony of plaintiff and his attorney, and the circumstances which preceded and attended the delivery of the car to Beard and Ringsrud, made an issue for the determination of the jury.

2. It is true that in the first instance defendant's responsibility was that of a bailee, but it was not a gratuitous bailee, for the car had been sold with a warranty of some sort, not shown by the record. Plaintiff testified that defendant promised him a car that was "No. 1," and it appears that he recovered substantial damages for breach of warranty in the first action he brought against defendant. It is a fair inference that there was a warranty that the car should be made to run, and defendant's conduct indicates that it recognized an obligation to plaintiff arising from the contract of sale and obtained possession of the car to

fulfil that obligation. As a bailee, it was originally liable only for the exercise of ordinary care, Johnson v. Smith, 54 Minn. 319, 56 N. W. 37, but that was not the extent of its liability, if it saw fit to entrust the car to the Jones Company and the latter practically destroyed it. Conceding, for the sake of the argument, that defendant was originally liable only in an action of assumpsit for a breach of the contract of bailment, or an action on the case for a neglect of duty whereby the subject of the bailment was lost, Wickstrom v. Swanson, 107 Minn. 482, 120 N. W. 1090, in which the burden of proof would be upon it to show that the practical destruction of the car did not come from its negligence—Davis v. Tribune Job Printing Co. 70 Minn. 95, 72 N. W. 808; Travelers Ind. Co. v. Fawkes, 120 Minn. 353, 139 N. W. 703, 45 L.R.A. (N.S.) 331; Rustad v. Great Northern Ry. Co. 122 Minn. 453, 142 N. W. 727; Hoel v. Flour City F. & F. Co. 144 Minn. 280, 175 N. W. 300— its conduct as a bailee may subject it to liability for conversion.

A bailor is not limited to a recovery in an action in the form of assumpsit or on the case, if the bailee has actually converted the property to his own use. In Davis v. Tribune Job Printing Co. supra, the right of the bailor to sue for conversion was not questioned and it was recognized in Lebens v. Wolf, 138 Minn. 435, 165 N. W. 276, L.R.A. 1918C, 868. The evidence is ample to sustain a verdict that there was a conversion of plaintiff's car. There was the exercise of dominion over it inconsistent with his rights, and acts were done which practically destroyed it. These acts constituted a conversion. Merz v. Croxen, 102 Minn. 69, 112 N. W. 890; Brandenburg v. N. W. Jobbers Credit Bureau, 128 Minn. 411, 151 N. W. 134, L.R.A. 1915D, 474.

3. It is strenuously urged that if there was a conversion it was by the Jones Company and not by defendant. It is true that the car was stripped of its parts while it was in the physical possession of the Jones Company, but that fact alone does not absolve defendant from liability for conversion. The jury was instructed that if satisfied that the Jones Company was "merely an arm of this defendant and were doing something for it, just as an employed workman might do in the next block," defendant would be liable for its acts. The instruction was correct and the evidence justified a finding in plaintiff's favor as to this issue. It

was no defense that the property was not in the physical possession of defendant when the action was commenced. It was sufficient to show that it had control of it at the time plaintiff demanded its return, that it refused, or unreasonably neglected, to return it, and that it had been delivered to defendant under the agreement to which plaintiff and his attorney testified. Morish v. Mountain, 22 Minn. 564; Davis v. Tribune Job Printing Co. supra; Boxell v. Robinson, 82 Minn. 26, 84 N. W. 635; Johnson v. Gerber, 114 Minn. 174, 130 N. W. 995; Brandenburg v. N. W. Jobbers Credit Bureau, supra.

4. Defendant cannot question Beard's authority to make the alleged agreement under which it obtained possession of the car. He was employed as a salesman, and had been sent twice to plaintiff's place of business to ascertain why the car could not be made to run. He had repeated conversations with plaintiff about it. Plaintiff's attorney had requested Whiteside to call upon him to discuss the trouble over the car. Whiteside told him he would have Beard come to see him about the matter. Within a day or two Beard went, accompanied by Ringsrud, and the agreement heretofore mentioned was made. Beard subsequently made several trips to Minneapolis at Whiteside's direction to get the car for plaintiff. If Whiteside delegated Beard to represent defendant in the negotiations which resulted in the delivery of the car, defendant is estopped from now questioning Beard's authority to make the agreement. Kilborn v. Prudential Ins. Co. 99 Minn. 176, 108 N. W. 861; Dispatch Printing Co. v. National Bank of Commerce, 109 Minn. 440, 124 N. W. 236, 50 L.R.A.(N.S.) 74; Sinclair v. Investors Syndicate, 125 Minn. 311, 146 N. W. 1109; Schauble v. Hedding, 138 Minn. 187, 164 N. W. 808.

5. Over defendant's objection, two witnesses were allowed to testify that prior to March, 1918, Beard and one Anderson severally promised plaintiff a new engine for his car. Anderson was one of defendant's employees and had sold the car to plaintiff. The court ruled that the evidence was admissible as having a bearing on the question of whether the car was delivered to defendant or to the Jones Company when the final arrangement was made in March. The ruling was right and the evidence was properly received for the purpose stated.

6. Complaint is made because the court refused to give certain requested instructions and because portions of the charge are said to be incorrect or inapplicable statements of the law. The charge, as a whole, was clear and comprehensive and fairly covered every phase of the case to be considered by the jury, and there was no error in refusing to give defendant's requests.

7. The correct rule of damages was given. The value of the car when plaintiff delivered it to defendant in March, and not its value when its return was demanded in December, is the measure of damages. As stated in Dolliff v. Robbins, 83 Minn. 498, 86 N. W. 772, 85 Am. St. 466, the purpose of the law is to secure to the injured party compensation for the loss of his property. If, prior to a bailor's demand for the return of his property and while it is under the control of the bailee, portions of it have been wrongfully appropriated, the bailee immediately becomes liable for conversion and must respond in damages measured by the original value of the property, and not by its reduced value brought about by his own wrongful act. There is evidence amply sustaining a finding that in March, 1918, the car was worth at least $700, which is the amount of the verdict as reduced.

The order appealed from is affirmed.