Action for damages resulting from collision between two automobiles. The trial court dismissed the action as to the defendant Commercial Credit Company and denied the motion for nonsuit as to the defendants Home Insurance Company and Pendleton Auto Company. Plaintiff had judgment and the two latter named defendants appeal.
Plaintiff brought this action against the Pendleton Auto Company, the Home Insurance Company and the Commercial Credit Company to recover damages for a personal injury resulting from a collision between an automobile which plaintiff was driving and one driven by one Baynard J. Sager, who the complaint alleges was the common servant and agent of all of said defendants at the time of the accident and whose negligence it is alleged was the proximate cause of the injury complained of.
The allegations of the complaint in respect to the relation claimed to exist between Sager and the defendants and of Sager's negligence are as follows:
"That thereafter on the 31st day of July, 1925, said Commercial Credit Company and said Home Insurance Company, and said Pendleton Auto Company, acting for and at the instance of said Commercial Credit Company and of said Home Insurance Company, were engaged in transporting said car from Pendleton, Oregon, to Portland, Oregon, for further repairs to be made thereon, and in so transporting said car were driving said car on the public highway from Pendleton, Oregon, to Portland, Oregon, near the town of Umatilla, acting by and through one Sager as the servant and agent of each of said defendants, and while so engaged then and there so *Page 52 
carelessly and negligently managed and operated said car and so carelessly and negligently operated the same without effective or any brakes and so negligently failed to ascertain that the footbrake of said car was so defective and out of repair that the same would not operate and so carelessly and negligently operated said car and drove the same upon the highway aforesaid without any windshield thereon to protect the eyes of the driver from the wind, dust and other objects which might impair or confuse his vision and so carelessly and negligently, in overtaking and attempting to pass upon said highway a certain Ford automobile then and there being driven on said highway by the plaintiff, failed to keep to the left side of the highway until sufficiently ahead of plaintiff's Ford automobile to give safe clearance and so carelessly and negligently turned said car to the right across the middle line of said highway while still opposite plaintiff's said automobile and so carelessly and negligently depended upon and used said footbrakes, defective and out of repair as aforesaid, and so carelessly and negligently operated said car with defective steering gear or apparatus that said Chrysler car collided with said Ford automobile driven by the plaintiff, causing the said Ford automobile to overturn and as a result thereof plaintiff suffered the injuries hereinafter set forth."
Each of the defendants filed a separate answer and denied liability upon its part for Sager's acts and denied that Sager was either serving them or acting for them at the time the plaintiff sustained the injuries complained of. The transactions out of which it is claimed that the alleged relationship between Sager and the defendants arose are as follows: On May 28, 1925, Gerald Rieden and wife purchased under a conditional sales contract a Chrysler automobile from the Pendleton Auto Company, a corporation engaged in business at Pendleton, Oregon, and on the same day the contract, together with the amounts *Page 53 
to become due thereunder, was assigned and transferred to the Commercial Credit Company for value, and the Home Insurance Company insured the automobile against damage from collision, naming in the policy as the assured Rieden and wife, the Pendleton Auto Company and the Commercial Credit Company, and stipulated in the policy that if any loss was sustained it should be adjusted with Rieden and wife as the purchasers of the car and be paid only to the Commercial Credit Company for the account of all interests. On July 4, 1925, Rieden sustained a loss and it was reported to the Commercial Credit Company, which in turn reported it to the Home Insurance Company. Thereupon, the Home Insurance Company appointed H.A. Hegeman, an independent adjuster, to adjust the loss, giving him the following instructions in writing, to wit:
"July 14, 1925, Noon.
"Mr. Hegeman:
"This loss has just been reported by the Commercial Credit Company and they request that immediate investigation be made. This automobile was in a wreck at Shaniko, Oregon, and is now in the Ross garage at that place awaiting adjustment. The loss occurred on July 4, 1925, car having gone over embankment at Shaniko, Oregon.
"M. TIMMERMAN.
"Will you kindly make this adjustment?"
Pursuant to his appointment, Hegeman called Rieden at Shaniko by phone and Rieden informed him that he had had some temporary repairs of the car made at Shaniko and that he would drive the car to Pendleton and deliver it there to the Pendleton Auto Company's garage where the loss could be adjusted. Hegeman then went to Pendleton for the purpose of making an adjustment and while there *Page 54 
met Rieden and S.S. Sayres, the president and general manager of the Pendleton Auto Company and, after an examination of the car, it was found that the damages were less than the value of the car and that it could be repaired, and that some of the repairs could be made at Pendleton by the Pendleton Auto Company while other repairs and some replacements would have to be made at Portland. It was understood and agreed that the Pendleton Auto Company should make certain repairs on the car so that it could be driven to Portland and should then select a suitable person to drive the car to Portland and that after the parts had been repaired or replaced at Portland, the car should then be driven back from Portland to Pendleton by Rieden and the final repairs of the car should then be made by the Pendleton Auto Company and that the total expense of making all of said repairs and replacements, including the amount paid by Rieden for the repairs made at Shaniko and also the cost and expense of driving the car to Portland and its return to Pendleton, less the sum of $100 as provided for in the policy, should be adjusted as the amount of the loss and be paid by the Home Insurance Company to the Commercial Credit Company for distribution by it to the parties making the repairs; and it was further agreed that the cost and expense of driving the car to Portland and back to Pendleton to be allowed and paid by the Home Insurance Company should be the sum of $56, which sum was fixed as a sufficient amount to pay the wages and expenses of the driver from Pendleton to Portland and his railroad fare back to Pendleton and Rieden's fare from Pendleton to Portland and the expenses of driving the car back to Pendleton, $28 to be allowed each way to cover such cost and expense. It *Page 55 
was further agreed that the charges of the Pendleton Auto Company for making both the preliminary and final repairs on the car, together with the sum of $56 as the expense of driving the car to Portland and its return to Pendleton, should be included in the adjustment and should be paid out of the moneys to be paid to the Commercial Credit Company.
Pursuant to this arrangement, the Pendleton Auto Company, after making certain repairs, secured Sager and employed him to drive the car to Portland and paid him $14 therefor, and, while he was so driving the car, the injury complained of occurred. Sager took the car to Portland and the repairs contemplated to be made there were made and the loss was then adjusted with Rieden and the Home Insurance Company then paid to the Commercial Credit Company the sum of $580.86, which was the total of all of said expenses after deducting therefrom the sum of $100, as provided for in the policy. Out of the sum thus paid the Commercial Credit Company paid to one Gerber for repairs and replacements made in Portland the sum of $345.66 and to the Pendleton Auto Company the sum of $235.20, which included the repairs made by the Pendleton Auto Company, the repairs made by Rieden at Shaniko and the $56 which it had been agreed should be allowed to the Pendleton Auto Company for the expense of taking the car to Portland and returning it to Pendleton.
The cause was tried to a jury and during the trial the Pendleton Auto Company offered evidence tending to show that Mr. Hegeman, the adjuster, while at Pendleton and engaged in the adjustment of the loss, entered into a contract on behalf of the Home Insurance Company that the car should be transported to Portland for the purpose of having it repaired and *Page 56 
for the benefit of the Home Insurance Company and that, in hiring and paying Sager, it was acting for the Home Insurance Company and as a mere intermediary. This testimony was contradicted by Mr. Hegeman and by questions propounded to him and also to Mr. Rasmussen, the northwest manager of the Home Insurance Company, that company sought to prove that Hegeman's authority was only to adjust the loss as set forth in the written instructions referred to. These questions were objected to and the objections sustained. Thereupon the Home Insurance Company offered to prove by each of said witnesses, if permitted to answer the questions referred to, that the Home Insurance Company had definitely instructed and informed Hegeman that it would not undertake or authorize him to undertake in its behalf the repair of this or of any other damaged car covered by any of its policies, or the transportation of any car for its repair or otherwise, and that such instructions were fully known to Hegeman and were in full force and effect at the time this case was assigned to him and at the time the loss was being adjusted by him, and that the only authority given Hegeman was the power to investigate the loss and determine the amount for which the insurance company was liable under the policy. This offer was rejected and the witnesses were not permitted to answer and this action by the court is assigned as error by the Home Insurance Company.
At the close of plaintiff's testimony each of the three defendants moved the court for an involuntary nonsuit against plaintiff. The motion was allowed as to the defendant Commercial Credit Company but denied as to the two other defendants. At the close of the testimony, the Pendleton Auto Company and *Page 57 
the Home Insurance Company each moved for a directed verdict. These motions were denied and the denial thereof is assigned as error. Plaintiff had verdict and judgment against the Pendleton Auto Company and the Home Insurance Company for $12,849.30, from which both of said defendants have appealed.
REVERSED. REHEARING DENIED.
The obligation of the Home Insurance Company must be measured by the terms of the policy alone and this obligation is expressly stated in the policy in these words:
"* * loss, if any, to be adjusted with purchaser, though to be paid, subject to all conditions of this policy, only to Commercial Credit Company, Baltimore, Md., for the account of all interests."
This was the only obligation which the insured, in case of loss, could require the company to perform. Rieden and wife were the purchasers and were so named in the policy and, since their rights in the car had been preserved up to the time of the adjustment, they were the persons with whom the company was *Page 58 
bound to adjust the loss and the only persons with whom the adjustment could be made. The amount of the loss could be determined in one of two ways only. One by a determination of the parties themselves, the other in case of suit by proof. In the case at bar the adjustment was made by a determination of the parties and without suit and, after the adjustment had been made, the amount agreed upon was paid over as required by the terms of the policy to the Commercial Credit Company and was by it distributed to those entitled to receive it. The adjustment was made by Rieden, acting for himself and wife, and by the company, acting through its adjuster.
In order to obtain an adjustment of the loss, the company selected and employed H.A. Hegeman, an independent adjuster, and authorized him to adjust the loss. An adjuster is a person who is selected because of his special skill and fitness and, as in all cases of delegated authority where personal trust or confidence is reposed in the agent, and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal and cannot be delegated to another unless there be a special power of substitution: Lyon v. Jerome, 26 Wend. (N.Y.) 485 (37 Am. Dec. 271).
"The agent of the company authorized to adjust a loss and selected for such purpose by reason of his special skill and fitness has no implied power to delegate his authority." 33 C.J., p. 37.
"An adjusting agent has no power to delegate his authority. His position is one of personal trust and confidence reposed in him by his principal and he cannot transfer his relation to a third party." Albers v. Phoenix Ins. Co., 68 Mo. App. 543. *Page 59 
As said by this court, speaking through Mr. Justice McBRIDE, inSchluter v. Niagara Fire Ins. Co., 124 Or. 560
(264 P. 859):
"* * The same thing may be said of evidence of declarations by the adjuster to like effect. He had no power to make such declarations or do anything but to adjust the losses according to the terms of the policy."
In 1 C.J., at page 1237, an adjuster is defined as
"One whose business it is to ascertain the loss and agree with the assured on the settlement; one who determines the amount of a claim, as a claim against an insurance company; the person who makes the adjustment or settlement."
In Weed v. London L. Fire Ins. Co., 116 N.Y. 106
(22 N.E. 229), the question was whether an adjuster had the power to waive a defense based upon failure of the assured to comply with certain conditions of the policy. In this case the court said:
"Rice (the adjuster) was not an officer or general agent of the company. He was a resident of Albany engaged in an independent business as an insurance adjuster, giving his services to any person who wished to employ him.
"There is no evidence in the case to show that he had any power whatever, except to ascertain and adjust the loss sustained by the assured, and the plaintiff is chargeable with knowledge of his powers and the extent of his authority."
And again the court said:
"His business was to ascertain the loss and fix and adjust the amount. Beyond that he had no duty to perform and no power to act."
In Bond v. National Fire Ins. Co., 77 W. Va. 736
(88 S.E. 389), it is said: *Page 60 
"There is conflict of testimony as to whether Horkheimer promised to pay, but none as to his authority to make the promise. * * The word `adjuster' as applied to insurance companies, has a well understood meaning.
"`Adjuster — one who determines the amount of a claim.' 1 Cyc. 795.
"`Adjusters, appraisers, medical examiners, and attorneys are strictly special agents, whose authority to bind the company is narrowly confined to acts incident to the discharge of the special functions for which they are employed.' Vance on Insurance, 316.
"`An adjuster is one who determines the amount of a claim, as a claim against an insurance company.' 1 Words Phrases, 195.
"The following are well settled rules respecting the appointment, duties, and authority of adjusters for insurance companies: * *
"Second. An insurance adjuster is ordinarily a special agent of limited authority to ascertain and adjust the loss, having no power merely as such in the absence of some evidence as to his authority to alter the contract, or waive any of its essential conditions."
In Chisholm v. Royal Ins. Co., a Massachusetts case reported in 225 Mass. 428 (114 N.E. 715), it was held that an adjuster had no power to bind the company beyond the obligations of the policy, the court saying:
"Church (the adjuster) had authority only to ascertain and adjust the loss sustained by the theft of the automobile; and there is nothing in the record to show that the company ratified his alleged agreement to give the plaintiff a practically new car, or that it waived the provision of the policy limiting its liability to the actual cost of repairing, or, if necessary, replacing the parts damaged or destroyed by the theft." *Page 61 
In Baker v. Seaweard, 63 Or. 350, it is said on page 354 (127 P. 961, 962):
"We will first ascertain the law as to the agency, and who must determine the issues thereunder. It may be stated generally that a principal is not bound by the acts of his agent, unless within the real or apparent scope of the authority of such agent; and one dealing with an agent is bound, at his peril, to ascertain the extent of the agent's authority, and is chargeable with knowledge thereof. Reid v. Alaska Packing Co., 47 Or. 215
(83 P. 139). And where a party relies upon a contract made with a person claiming to be an agent of another, he must prove, where the agency is disputed, that he was expressly empowered to make the contract, and that its terms were within the scope of his authority. Rumble v. Cummings, 52 Or. 203 (95 P. 1111)."
And again on page 355 of 63 Or. (127 P. 962):
"The principal is often bound by the acts of his agent in excess of his authority; but two important facts must be clearly established to create such a liability: (1) The principal must have held the agent out to the public in other instances as possessing sufficient authority to embrace the particular act in question, or knowingly have acquiesced in the agent's assertion of the requisite authority; and (2) the party dealing with such agent must have had reason to believe, and must have believed, that the agent possessed the necessary authority. Justice MOORE, in the case of Connell v. McLoughlin, 28 Or. 232
(42 P. 218), says these two facts must always be established to render the principal liable for the act of his agent in excess or abuse of his authority; for any person dealing with an agent does so at his peril."
In dealing with Hegeman, the Pendleton Auto Company knew the nature and character of Hegeman's employment and of the limitations and restrictions upon the power of an adjuster. The parties dealing *Page 62 
with him knew that he was not a general agent of the company and knew or should have known that he had no power to bind his company by a contract either to repair the car or send it to Portland for repairs. They were bound to know that an adjuster had no power to incur any obligation upon the part of his principal which was not imposed upon the principal by the terms of the policy itself. There was no evidence in this case showing any liability of the Home Insurance Company for the alleged negligence of Sager except through the alleged contracts of Hegeman, and these contracts, if made, were not binding upon the company because they were neither authorized nor within the scope of his authority. It was, therefore, error for the court to refuse to direct the jury to return a verdict for the Home Insurance Company.
The Pendleton Auto Company assigns error upon numerous grounds. It contends that it was acting as a mere intermediary of the Home Insurance Company, which contention we have shown to be untenable. It contends that Sager, in driving the car to Portland, was an independent contractor for whose acts it is not liable and that there was no evidence to support the verdict.
"One who contracts to do a specific piece of work, furnishing his own assistants and executing the work either entirely in accordance with his own ideas or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is clearly a contractor, and not a servant." Hale v. Johnson, 80 Ill. 185; Linquist v.Hodges, 248 Ill. 491 (94 N.E. 94).
We think there was evidence to go to the jury upon the question of the Pendleton Auto Company's *Page 63 
liability to plaintiff because of Sager's negligence. Whether Sager at the time of the accident was a servant of the Pendleton Auto Company or was in the position of an independent contractor for whose acts the Pendleton Auto Company would not be liable are questions of fact for the jury. For this reason, it was not error for the court to refuse to grant the motion of the Pendleton Auto Company for a nonsuit or refuse to direct a verdict in its favor. In effect, the trial court instructed the jury that it could find that the Pendleton Auto Company and the Home Insurance Company were engaged in a joint enterprise while the car was being driven by Sager to Portland. There was no evidence to show that these two corporations were engaged in a joint enterprise at said time and it was error for the court to instruct the jury to that effect. This was prejudicial to the Pendleton Auto Company and probably affected the amount of the verdict. If they had not been so joined, it is possible that the jury would have refused to return a verdict against the Pendleton Auto Company for any amount.
Because of this error, the judgment must be reversed as to the Pendleton Auto Company and the cause will be remanded to the court below with directions to dismiss the action as to the Home Insurance Company and for such other proceedings as are not inconsistent herewith.
REVERSED. REHEARING DENIED.
COSHOW, C.J., and McBRIDE and ROSSMAN, JJ., concur. *Page 64