## MAUDE E. BREUER v. CONTINENTAL INSURANCE COMPANY OF NEW YORK.[1]

January 27, 1933.

No. 29,301.

[1]Reported in 246 N. W. 533.

*Garfield H. Rustad, Pierce, Tenneson, Cupler & Stambaugh,* and *Charles J. Vogel,* for appellant.

*Schroeder & Hogan,* for respondent.

HOLT, JUSTICE.

Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

Plaintiff, the owner of an automobile, was insured by defendant against loss or damage thereto on account of collision or upset. While so insured and on May 25, 1931, the car ran off the highway near Casselton, North Dakota, struck a telephone pole, and was damaged. Defendant was notified of the accident and employed Charles J. Vogel of Fargo to adjust plaintiff's loss. So far there is no dispute between the parties. But subsequent delays and misunderstandings occurred which resulted in the bringing of this action for conversion of the car.

The car was a Willys coupé, bought by plaintiff in the fall of 1930 from a person operating a garage at Callaway, Minnesota. The damage to it was estimated at about $200 and its value before being damaged at $775. Plaintiff desired that the one who sold her the car should repair it. Mr. Vogel had caused Steen & Berg, garage men at Fargo, to estimate the cost of the repair, and plaintiff claims that Vogel agreed to adjust the loss by having Steen & Berg make the repairs and deliver it to plaintiff in the condition it was before the accident; that she was notified on August 8 that the repairs had been made; that she thereupon went to Vogel and requested its delivery; that Vogel refused to deliver the car unless she signed a subrogation agreement; and that she refused so to sign. She testified that there were subsequent negotiations and futile demands for the car; and that finally, on November 4, 1931, she, with

two other persons, went to Vogel's office and again demanded possession of the car but was refused unless she signed the subrogation agreement. About two months thereafter this action was brought.

Defendant maintains that Vogel had no authority to make the agreement plaintiff contends he made; that in fact he neither made such agreement nor employed Steen & Berg to get the car from the garage it was taken to at Casselton, after the collision, nor employed that firm to repair it; that plaintiff directed Steen & Berg to bring the car to their garage at Fargo and make the repairs; and in fact ordered them to repair brake linings, the need of which repair was not caused by the accident. Of course, if the contention of defendant was found true by the jury, there was no conversion, as the court properly instructed.

Under the testimony adduced by plaintiff, the taking of the car by defendant to Steen & Berg's garage, and their possession while the repairs were made, was with her consent. It was in legal effect a bailment. There is no proof that anything done with the car, either by defendant through Vogel or by Steen & Berg until the repairs were completed, was in violation of plaintiff's rights in or to the car. But plaintiff claims that under the agreement the loss was to be adjusted by defendant's making the repairs and delivering it to her when repaired.

The first legal question presented is that Vogel as adjuster had no authority to adjust the loss by agreeing to repair the car; that his employment went no further than to agree with the assured upon the amount of the loss. We doubt whether an adjuster under this policy is so restricted. It provides that the appraised loss or damage shall in no event exceed "what it would then cost to repair or replace the automobile or parts thereof with other of like kind and quality." If the adjuster in such a case, instead of agreeing upon the amount of the loss to be paid, should agree to replace or repair the parts damaged, it would be rather narrow construction to hold that it was not within his authority. From Roemhild v. Home Ins. Co. 130 Or. 50, 59, 278 P. 87, 90, particularly relied on by defendant, we quote:

"In 1 C. J., at page 1237, an adjuster is defined as 'one whose business is to ascertain the loss and agree with the assured on the settlement; one who determines the amount of a claim, as a claim against an insurance company; the person who makes the adjustment or settlement.' "

In Lancashire Ins. Co. v. Barnard (C. C. A.) 111 F. 702, 704, it is said:

"But an adjuster is empowered to settle the alleged loss. A settlement of the loss necessarily involves the exercise of the option to pay the damages sustained, or to rebuild or repair the building injured. The whole is always greater than and includes all its parts, and the authority to settle a loss includes the power to do any lawful act and to make any legal contract to fix the amount of and to discharge the liability."

We find no restrictions or limitations when defendant named Mr. Vogel as adjuster of the loss plaintiff sustained in collision or upset of her car. As supporting defendant's contention, that his authority could go no further than to agree with plaintiff upon the amount of the loss, is cited Chisholm v. Royal Ins. Co. Ltd. 225 Mass. 428, 114 N. E. 715, 716. In that case the adjuster agreed that the insurance company not only should repair the damage to the car resulting from its theft but also should put the car in as good condition as when new. The adjuster's agreement was held good to the extent of the coverage of the policy and properly no further, the court saying [225 Mass. 431]:

The adjuster "had authority only to ascertain and adjust the loss sustained by the theft of the automobile; and there is nothing in the record to show that the company ratified his alleged agreement to give the plaintiff a practically new car, or that it waived the provision of the policy limiting its liability to the actual cost of repairing, or, if necessary, replacing the parts damaged or destroyed by the theft."

It seems the inference from this language is against defendant's contention. Roemhild v. Home Ins. Co. 130 Or. 50, 278 P. 87,

is also cited with confidence by defendant. In that case an adjustment of the loss had been made, and a certain agreement was alleged between a garage having charge of the repairs and the adjuster as to transporting the car from one place to another in order to make the repairs. In the action for damages by a third party, injured in a collision on the highway when the car was transported, the trial court excluded evidence by the insurance company that the adjuster had no authority to enter the agreement for transportation. This was held error. This case is not an authority upon the facts which the jury was warranted in finding in the case at bar. However, we find it unnecessary here to define the limits of the authority conferred on Mr. Vogel by his employment as loss adjuster, for we consider that there is evidence from which the jury could find that defendant adopted and ratified Vogel's acts in undertaking to repair the car in settlement of the loss.

Plaintiff testified that she did not direct Steen & Berg to take possession of the car or to repair it. In this she was in a measure supported by the fact that Steen & Berg charged the work to Vogel. Vogel's authority to employ Steen & Berg is indicated by defendant's making its check or draft for the amount of the repairs payable to the order of Steen & Berg as well as to plaintiff. There was no pretense that defendant so made it payable at plaintiff's request. By letter of November 5, 1931, plaintiff advised defendant directly as to the agreement she had made with Vogel, pursuant to which she had delivered possession of the car for repairs by defendant, and complained of the refusal to return it to her. She also advised defendant of the unreasonable demand of Vogel that she should first make a subrogation assignment to defendant. There was no subsequent word from defendant in any manner denying authority in Vogel in the premises. In our opinion the jury could well find that Vogel had authority to make the settlement plaintiff testified he did make with her.

It appears that the only excuse Vogel and defendant made for not delivering the car, after being repaired, was, according to plaintiff's testimony, that she should first make a subrogation assign-

ment to defendant of her cause of action for negligence of a third party. At the trial defendant virtually conceded that this was an unreasonable demand, for the car left the road through no one's negligence, unless it was the negligence of plaintiff herself, who then held the steering wheel. While the repairs were going on Steen & Berg suggested that brake linings should be replaced, at a cost of $11 or $12. This was not covered by the policy, and plaintiff agreed to pay for that. At no time did that item figure in the controversy or misunderstandings between the parties to this action. So neither the failure to sign the subrogation document nor the brake linings ordered by plaintiff can serve as a valid excuse for depriving plaintiff of possession of her car, and need not be considered of any importance in this appeal.

Defendant urges that a cause of action for breach of contract cannot be changed into a cause of action for conversion. Lininger Imp. Co. v. Queen City F. Co. 73 Colo. 412, 216 P. 527; Farmers State Bank v. Bowles, 52 N. D. 553, 203 N. W. 903, 40 A. L. R. 377, are cited. A mere reading of those decisions indicates the rule to be inapplicable to the facts herein as the jury could and did find them. If the car was bailed to defendant for the purpose of repairing the damage covered by the policy, plaintiff was entitled to a return when repaired. If then withheld from her without just cause, there was a conversion, and she would be entitled to the reasonable value of the car. The same damages would result if the action had been for failure to deliver after the repairs were made. But a wrongful exercise of dominion over personal property to the exclusion of the rightful owner, depriving the latter of its use and possession, is conversion. Wellberg v. Duluth A. S. Co. 146 Minn. 29, 177 N. W. 924, appears to be in point here.

There are many assignments of error upon rulings excluding or admitting testimony. They have all been examined, but we find none that can be held prejudicial to defendant. The attorneys on both sides were vigilant in interposing technical objections. But in the course of the trial, with the introduction of other testimony or proper foundation, the objections faded and the evidence sought

to be introduced was properly received or excluded. We discover no substantial error in the rulings.

Exception is also taken to that part of the charge which submitted to the jury whether or not defendant by conduct had estopped itself from asserting that Vogel had exceeded his authority, in that the court eliminated the question of his actual authority from the jury. But as we read the part of the charge now challenged, it specifically leaves to the jury to find what authority defendant had given him. It was stated that defendant claimed that Vogel had no general authority; that he was appointed for a specific purpose and was without authority to make the agreement plaintiff asserted was made. The charge as given finds support in 2 Couch, Insurance, p. 1468, on the subject of apparent authority.

We think there is no merit in the contention that plaintiff waived her cause of action for conversion when on November 4, 1931, she presented another proof of loss to defendant in an attempt to get her car. Defendant did nothing in reliance thereon.

Plaintiff recovered on a second cause of action for premium paid on this policy but which had not been earned when, by defendant's conversion of the car, the policy became useless to her. Of course if there was no conversion of the car there could have been no recovery on the second cause of action. But we conclude that the verdict for conversion must stand, and that the unearned premium on the policy should be returned. Defendant does not question the amount.

The order is affirmed.

STONE, JUSTICE (dissenting).

Assuming the subsidiary points correctly decided, I must yet insist that the decision is wrong in result for the simple reason that on the record, construed as favorably as it can be for plaintiff, there is no showing of conversion.

Stripped of all camouflage of mere characterization by interested witnesses, the controlling facts are these: The automobile was towed into Casselton on order of defendant. That was the sensible as well as lawful thing to do in the interest both of owner and in-

surer. So far nobody claims any tort. From Casselton the car was taken to the Steen & Berg garage at Fargo.· There it was in the possession of neither plaintiff nor defendant, but rather and only in that of Steen & Berg, who had it as bailees for the purpose of the repairs. Plaintiff admits that Mr. Vogel, the adjuster, assured her, and that she understood, she could have the job done anywhere else. She preferred to give the work to a Mr. Constant at Calloway, in Minnesota. She talked with him and found that "he could not repair it" for the price made by Steen & Berg. Defendant being unwilling to pay more than the amount of their estimate, plaintiff agreed that the work should be done by Steen & Berg. She had been told, as she admits, that defendant "was willing to have it repaired anywhere." Mr. Erickson, shop foreman for Steen & Berg, testified without contradiction that he explained to her what had to be done. "She was satisfied that we could do the work all right and agreed to have it done by us." She ordered on her own account the additional item of brake lining, payment for which was not chargeable to defendant. Due to delay in getting new parts from the factory, the job was not completed until August 8. From that time on plaintiff could have taken her car at any time upon payment of the bill for repairs.

The attitude of Vogel, the adjuster, is evidenced better by his correspondence with plaintiff at the time than by her testimonial characterizations of it on the witness stand. There is nothing in the correspondence to qualify what he said to her in the letter of October 17, 1931, which he concluded by saying:

"With reference to your car, it has, as you have been advised, been ready long ago and is still waiting for you at the Steen & Berg garage in Fargo. Draft in payment of the claim as well as the proof to be signed by you is in my possession, and I will be glad to turn it over to you upon your completion of the proof."

So plaintiff must have understood all along that while she was being delayed in getting the draft by her refusal to sign the proof of loss as Vogel wanted it signed, including the subrogation agree-

ment, her automobile awaited her at the garage and that she could get it whenever she wanted it.

The adjuster blundered when he insisted on a subrogation agreement where there was no right to subrogation. But it is plain that he never did, nor intended to do, anything denying plaintiff's property in the car or her right to the immediate possession of it. Of course it was understood that if he would pay the repair bill she could get it at any time. It was understood also—we cannot take it otherwise in view of the record—that Steen & Berg were entitled to retain possession under the lien given them by the statute of North Dakota, which is in evidence. The adjuster should have paid that bill promptly and without delay. The only wrongdoing chargeable to him, and so to defendant, is that he defaulted in that obligation. That does not constitute conversion.

In Brandenburg v. N. W. Jobbers C. Bureau, 128 Minn. 411, 413, 151 N. W. 134, L. R. A. 1915D, 474, conversion is defined thus:

"To constitute a conversion of personal property there must be some exercise of the right of complete ownership and dominion over it, to the total exclusion of the rights of the owner, or else some act done which destroys it or changes its character or in some way deprives the owner of it permanently or for an indefinite length of time."

Here there was no deprivation of the owner's right chargeable to defendant. The deprivation, if any, was due solely to the possessory lien of Steen & Berg. Concededly, defendant should have paid their bill promptly. But its default was only breach of contract obligation to pay money, and not at all assertion of right to possession of the car or any interest therein. Nor did it in any way impede plaintiff's repossessing her property. She could have paid the bill, taken the car, and at once sued defendant upon its obligation to pay the damage, the only obligation ever put upon it by the contract of insurance. With our aid that contract obligation is now supplanted by one in tort to take and pay for the car.

As to the recovery of the insurance premium unearned at the time of the alleged conversion, I am equally unable to agree. If

upon that point the majority opinion is correct, we have a new element added to the measure of damages in all cases of trover involving insured property. The converter is liable, as heretofore, for the market value of the property at the time of conversion, plus the element now added of any and all unearned portions of insurance premiums, of whatever character, which had been paid for insurance on the converted chattel. That is hardly fair against an insurer who is made to assume a greater burden than he was paid to assume. He is thereby not only made to perform something more than his contract obligation but also, and simultaneously, is deprived of part of the compensation paid him for assuming any obligation.