INTERSTATE INSURANCE COMPANY *v.* LOGAN

[No. 35, October Term, 1954.]

*Decided December 10, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Stanley E. Hartman,* with whom were *Fell & Hartman* on the brief, for the appellant.

*Murray MacNabb* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This action for conversion of an automobile was brought in the Baltimore City Court by John Logan, of Dundalk, against Fox Chevrolet Sales, Inc., a corporation operating a garage in Baltimore, and Interstate Insurance Company, a New Jersey corporation.

Plaintiff's automobile, a 1951 Chevrolet sedan, which was insured against loss by theft, was stolen on March 16, 1952. It was recovered on the same day after it was wrecked in a collision in which the thief was killed. Plaintiff presented a claim of loss to Leo Mayberry, one of Interstate's insurance adjusters, who offered $1,725 in settlement of his claim. That offer, however, was not satisfactory to plaintiff. Mayberry then asked him for permission to have the car taken to Fox Chevrolet's garage on South Hanover Street to find how much it would cost to repair it.

On March 23 plaintiff wrote to Interstate's home office in Newark, New Jersey, that he preferred to have a cash settlement, as the car had been badly damaged and a man had been killed in it, but he did not think Mayberry's offer was fair. He felt that he was entitled to $1,950. Nevertheless, on March 31 plaintiff wrote to Interstate's Baltimore office giving his permission to have the automobile repaired. Accordingly on April 3 Mayberry ordered Fox Chevrolet to make the necessary repairs. The insurer agreed to pay for the repairs upon submission of proof of loss.

After plaintiff received notice that repairs had been made to his automobile, he asked two men, who were engaged in the used car business, to inspect it. The two men made a list of eighteen items of damage which were still unrepaired. On June 9 plaintiff's attorney wrote to the insurer that the automobile had been "merely patched up," and that plaintiff would not accept it in that condition. On June 12 Robert Fox, president of Fox Chevrolet, requested plaintiff's attorney to send to him the list of eighteen items. The attorney did so, and Fox Chevrolet made further repairs.

On receiving notice that the automobile was ready for a second inspection, plaintiff asked Francis J. Ilers, one of the men who made the first inspection, to go down to the garage and look at the car again. On that inspection Ilers found that at least four items were still in need of repair. He testified as follows about the uncorrected damages: "First, the repainting of the car; it still had evidence of having been painted, because the sanding marks were still apparent on the roof. Apparently the corrections made on the part of Fox Chevrolet was to take and buff it with a wheel. I don't think it had been repainted. * * * The drip rail was not replaced. It was still spliced in half there and still showing. * * * The roof still showed evidence of damage, and the most important thing I remember was the fact that the cross member had not been touched."

On July 2, 1952, plaintiff's attorney wrote to the insurer that Fox Chevrolet had done "a botch job." Mayberry inspected the automobile again, and on July 14 he wrote to plaintiff's attorney that repairs and replacements had been completed in a good workmanlike manner. "We would appreciate it," he added, "if Mr. Logan would make a personal inspection of this car and road test it for his own satisfaction. He enclosed a proof of loss and release filled out for the cost of repairing the car for plaintiff's signature.

When plaintiff made the third inspection of the automobile, he found that it was still not fully restored. "The third time I went down," he testified, "there was a few minor adjustments, paint scars, and the liner in the roof was wrinkled." He told Mr. Fox that he needed an automobile, but he could not accept that car under those conditions. He further testified that he wanted to have his automobile for thirty days to road test it, but Mr. Fox would not allow him to take it out of the garage until he signed the proof of loss and release. He refused to sign this instrument because it would release and discharge the insurer from all claims that he might have against the insurer under the policy.

The trial judge instructed the jury in substance as follows: (1) that under the theft policy the insurance company had the right to indemnify by making repairs to the automobile and, if it properly made such repairs, the verdict should be in favor of defendants; (2) that if the jury found that Fox Chevrolet repaired the automobile in a good and workmanlike manner, it could claim a lien on the automobile and could retain the automobile until the charges for repairs had been paid; and (3) that plaintiff claimed damages on the ground of an unreasonable refusal of Fox Chevrolet to give him his automobile and the failure of defendants to restore it to the condition it was in before the theft, and if the jury found that defendants did refuse unreasonably to carry out their obligations and thereby did wrongfully deprive plaintiff of its possession, then the verdict should be for plaintiff.

The jury found in favor of Fox Chevrolet, one defendant, but in favor of plaintiff for the sum of $1,828.50 against Interstate, the other defendant. Interstate appealed from the judgment entered against it.

The main contention on this appeal was that there was no legally sufficient evidence of conversion to warrant submission of the case to the jury. The insurer argued that the release it asked for was merely the usual form of release to show that the claim had been settled on completion of the repairs; that the insurer had not made any claim inconsistent with plaintiff's ownership and right of possession; and that plaintiff, not wanting to take his automobile back, had quarreled over several trivial items only as a subterfuge to try to get payment in cash.

Where an insurance company elects to repair damaged property for an insured, it is bound to put the property back in substantially the same condition or in as good condition as it was in before the loss, and the repairs must make the property as serviceable as it was before the loss. *Keystone Paper Mills Co. v. Pennsylvania Fire Insurance Co.*, 291 Pa. 119, 139 A. 627; *Cocklin v. Home Mutual Insurance Ass'n of Iowa*, 207 Iowa 4, 222 N. W. 368. Also, where an insurance company delivers an automobile to a repairman to make repairs of damages covered by an insurance policy, the insured is entitled to have the automobile returned to him within a reasonable time after it is repaired. If, after the repairs are made, the repairman wrongfully withholds possession of it from the owner without just cause, the insurer is liable for conversion and the owner is entitled to recover the value of the automobile. *Breuer v. Continental Insurance Co.*, 188 Minn. 112, 246 N. W. 533; 6 *Appleman, Insurance Law and Practice*, sec. 4005.

In *Saunders v. Mullinix*, 195 Md. 235, 240, 72 A. 2d 720, we stated that forcible dispossession of personal property is not essential to constitute a conversion. A "conversion" is any distinct act of ownership or dominion exerted by one person over the personal property of

another in denial of his right or inconsistent with it. *Merchants' National Bank of Baltimore v. Williams,* 110 Md. 334, 72 A. 1114; *Martin v. W. W. Lanahan & Co.,* 133 Md. 525, 105 A. 777.

An illustration of conversion of an automobile is afforded by *Pennsylvania Fire Insurance Co. v. Levy,* 85 Colo. 565, 277 P. 779, 780, 75 A. L. R. 1416. In that case the plaintiff's insured automobile was stolen and shortly afterwards recovered in a damaged condition. The plaintiff tried for about a month to get what he considered was a fair settlement. He demanded possession of the automobile, but he was told that he could not have it unless he accepted the insurer's terms of settlement. He thereupon instituted suit for conversion. It was held in that case that the insurer's refusal to release the automobile unless the owner accepted the terms of settlement constituted a conversion. The Court there said: "The insured was indemnified by the insurance contract against a specified peril, namely, loss by theft, but when the company held the car to be ransomed on its own terms, the insured was in about as bad a way, and as effectively deprived of his property, as if it had not been recovered at all."

In the instant case plaintiff insisted that he was not compelled to sign a release of the insurer when some of the items of damage had not been repaired. One of the insurer's witnesses, an appraiser, who had inspected plaintiff's automobile, admitted in the Court below that there were still a number of defects which had not been corrected. He admitted that the right front fender had not been undercoated; the "rocker panels" under the door between the fenders had indentations; the rear floor mat was torn; the clock and cigarette lighter were missing; and the radio antenna had not been replaced. Plaintiff also asserted that it is impossible to tell whether an automobile is free of defects until it has been driven for some distance, but he was not allowed to take his automobile out of Fox Chevrolet's garage in order to test it.

We agree with plaintiff that the insurer was not justified in refusing to make payment to Fox Chevrolet for the charges for repairs. Fox Chevrolet, acting upon instructions from the insurer, refused to deliver the automobile to the owner unless he signed a complete release for the insurer. It is evident that Fox Chevrolet, in refusing to allow the owner to have his automobile, relied on the Maryland Garage Lien Law. That statute provides that whenever a motor vehicle is left by the owner, or by any other person with his authority, express or implied, in the custody of any corporation, firm or individual for repair or storage, the corporation, firm or individual in whose custody the vehicle is left shall have a lien on the vehicle for all charges incurred, and may lawfully retain the same until the charges have been paid or until the lien is discharged. Code 1951, art. 63, sec. 41. But Fox Chevrolet's contract was with the insurer, not with plaintiff, and it was the insurer who was responsible for the conversion. The jury might properly have found that Fox Chevrolet was acting on orders of the insurer to force the insured to settle on terms dictated by the insurer.

The insurer complained because the jury brought in a verdict against it, but did not bring in a verdict against Fox Chevrolet. We find no merit in that objection. The jury evidently relied on the Garage Lien Law, which allows the owner of a garage to retain possession of a motor vehicle until all charges for repairs have been paid. The charges had not yet been paid, and so Fox Chevrolet had the right to retain possession of the car.

We find no merit in the contention that the judgment for $1,828.50 was excessive. It was undisputed that plaintiff had paid $2,281.72 for the automobile and a number of accessories. It had gone 13,000 miles, but plaintiff testified that he had taken good care of it and there was not a scratch on it. The adjuster had offered him $1,725, and so the judgment is only $103.50 more than the adjuster's cash offer.

*Judgment affirmed, with costs.*