[No. 5587.]

The Sigel-Campion Live Stock Company v. Holly.

1. Pleading—The complaint in an action for the conversion of goods must contain all the allegations which at common-law were material to a declaration in an action of trover.—P. 583.

Amendments—The code favors amendments in furtherance of justice. To refuse an amendment presented upon the trial, asserting material matters which have come to the knowledge of the party during the trial, is an abuse of discretion.—P. 587.

Greater liberality to be allowed in the amendment of the answer than the complaint.—P. 588.

2. Damages—The measure of damages in. trover is the market value at the time of the conversion, with interest.—P. 583.

Evidence as to—In trover for cattle plaintiff claimed under a chattel mortgage of certain steers and certain cows. Defendants had received from the mortgagee and sold fifty-seven head of cattle of the same brand, but how many were steers and how many were cows did not appear. The cows were shown to be much less in value than steers. Held, there was no sufficient basis for an estimate of damages.—Pp. 584, 585.

3. Chattel Mortgage—Description—One owning sixty-four cows, all bearing a certain brand, executed a chattel mortgage of "fifty-six cows from two to six years old, branded," etc., located upon certain lands described; held void.—P. 584.

4. Estoppel—By Conduct—Mortgagee of live stock knowing that the animals have been sent to a commission merchant for sale takes no steps to reclaim them, or inform the commission merchant of his right until the cattle have been sold, and the proceeds paid to the mortgagor, mortgagee meanwhile looking to

the mortgagor for such proceeds. He is estopped by his laches to demand the value from the commission merchant.—Pp. 586-587.

5. **Trover — Conversion — The** mere exercise of acts of ownership, if not inconsistent with the title of another, or if the owner consents, is not a conversion.—P. 589.

6. **Instructions—Must State All the Issues—It** is error to set forth in the instructions the case made by the complaint, and ignore the issues presented by the answer.—P. 589.

It seems that a probability that the jury will be misled by an error in the instructions is fatal.—P. 589.

7. **Tender—Conditional—An** offer of payment on condition that the payee will execute a receipt of equivocal import which may be construed as a waiver of the payee's demand on another account is no tender.—P. 590.

### *Appeal from Denver District Court.*
### *Hon. Samuel L. Carpenter, Judge.*

Messrs. GOUDY & TWITCHELL, for appellant.

Mr. J. W. MILLS, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

J. S. Holly owned cattle branded "7-1." He sold to H. H. Mills 86 head of them, thirty steers and fifty-six cows. The cattle were not paid for at the time of sale and Mills gave his note to Holly for the purchase price and secured it by a chattel mortgage thereon. The mortgage provided that if the mortgagor removed the cattle from the county or sold or attempted to sell them without the written consent of the mortgagee, the latter might take immediate possession of the same. While the cattle were in possession of Mills, the mortgagor, in Larimer county, the indebtedness being unpaid, the complaint alleges that he, without consent, either in writing or otherwise, of the mortgagee Holly, on the 26th of January, 1903, wrongfully removed and shipped to defendant in the city and county of Denver fifty-seven head of the cattle included in the mortgage,

which defendant received and sold, the proceeds of which were converted to its own use, defendant theretofore knowing of the existence of the mortgage and that it was still a valid lien on the cattle. The complaint asks for damages against defendant company for the value of the cattle converted A · second cause of action is for $88.81 on an account stated.

The defenses of the answer material on this review are that defendant company is engaged in the commission business, selling on commission live stock, and for a number of years had in that capacity received and sold cattle for Mills, and whatever cattle, claimed by plaintiff, it may have received from Mills January 26th were sold by defendant as a commission agent without knowledge of plaintiff's mortgage. One defense is that defendant had no actual knowledge of the mortgage, and as the description of the property therein is insufficient and uncertain, and on its face is void, the record of the mortgage did not constitute constructive notice of its existence. Another defense is that Mills, the mortgagor, at the time alleged in the complaint when the mortgage was executed, was the owner of a hundred or more head of cattle located at the ranch described in the complaint and in the mortgage, all branded with the "7-1" brand, and that it was impossible for parties dealing with Mills to determine from such description what particular cattle were intended to be embraced therein. Another defense is that the mortgagee gave permission to the mortgagor to sell and remove the cattle.

Judgment went for plaintiff upon both causes of action and defendant appealed. It assigns many errors for reversal. Some of the questions may not be presented at another trial and we shall dispose of the case upon those assignments which we consider important.

1. The case as made by the first cause of action in the complaint is one of trover and conversion. While the code abolishes the distinction between different forms of action, the complaint for a conversion of property, under the code, must now contain all the material allegations which were necessary in an action of trover at common law.—21 Enc. Pl. & Pr., p. 1060. The defendant complains that it is uncertain whether the first cause of action is one in trover, or on an implied contract for the proceeds of the sale of the cattle converted. If the complaint is thus defective, defendant did not properly take advantage of it below. Fairly construed, however, this cause of action would, at common law, be an action of trover and it was so submitted to the jury. In trover the measure of damages is the fair market value of the property converted at the time of the conversion and, in this jurisdiction, an additional amount equal to the legal rate of interest upon such value from the time of conversion to the time of trial. —*O. & G. S. & R. Co. v. Tabor*, 13 Colo. 41, 59. The only evidence of the value of the cattle in question is that of plaintiff and his witnesses. The verdict is not sustained thereby. The amount of the proceeds of the sale seems to have been adopted by the jury as the measure of plaintiff's damages. This is wrong, but the error might, and probably would, be corrected by reducing the amount of the judgment to correspond to the proof of value, if this was the only error in the record. But other and more serious errors committed by the trial court vitiate the verdict and compel a reversal of the judgment and remanding of the cause.

2. Counsel for both parties in tendering instructions were in accord that it is for the jury to determine whether the cattle alleged to have been converted are part of the cattle described in the mort-

gage, and whether, under the facts elicited at the trial, the description in the mortgage is, in fact, sufficient to enable third persons dealing with the owner of the cattle to identify them. The description in the mortgage is: "Thirty steers, two and three years old, branded 7-1, fifty-six cows, from two to six years old, branded 7-1, located on the John Daly land, one mile west of Loveland, Colorado." The court, for some reason not apparent from the record, told the jury, as matter of law, that this description was full and sufficient, and that if from the evidence they found that the mortgage was *bona fide,* it was a good and valid mortgage upon its face as between the parties and as against defendant. Whether, as matter of law, this description is *prima facie* good and sufficient is not now important. In view, however, of the uncontradicted evidence, the court, as requested by counsel for both parties, should have submitted to the jury the question whether it was such a description as, aided by inquiries which the mortgage itself indicates, is sufficient to enable third persons to identify the property. Such is the rule and such the test approved in *Tabor v. Sampson,* 7 Colo. 426. See, also, *Kelly v. Reid,* 57 Miss. 89; *Stonebraker v. Ford,* 81 Mo. 532. The evidence establishes that at the time the mortgage was given the mortgagor Mills had in his possession, at the place described in this mortgage as the location of the mortgaged property, other cattle branded with the same brand. The mortgagor testifies that he then had at least sixty-four cows thus branded. Clearly, therefore, no one with this description in the mortgage before him could have identified the cows covered by the mortgage. Indeed the court seems to have recognized this, for in instruction No. 12 the jury were told that if they believed from the testimony that, at the time of the execution of the mortgage, the mortgagor had

at the place mentioned in the mortgage more than fifty-six cows from two to six years old, branded "7-1," that the mortgage was so uncertain as to the description of the cows that it would be void in that respect.   This instruction is inconsistent with, and repugnant to, instruction No. 5, wherein the court instructed the jury that the chattel mortgage contains a full and sufficient description of the cattle.   Under the uncontradicted evidence the court should not have given instruction No. 5, but should have told the jury, as it properly did in No. 12, that the description as to the cows was void.   Ordinarily, when two inconsistent instructions are given it is impossible to tell which the jury followed.   Apparently the jury here were guided by No. 5, the bad one, and ignored No. 12, which is good, for if they had been guided by the only evidence in the case on that subject they would have returned a verdict for defendant in accordance with instruction No. 12.   In addition to this there was a total failure of proof as to how many of the fifty-six head received by defendant were steers and how many were cows.   This being so, not only were the cattle not properly identified, but there was an entire absence of any substantial data from which their value could be determined in the light of the evidence that, at that time and place, the market value of steers was $30 and of cows $20 per head.

3.   The cattle in question were shipped from Larimer county by Mills, the mortgagor, and received by defendant in the city of Denver, January 26, 1903, and then sold by defendant on commission, and the amount credited Mills' running account. Upon the trial, and during the examination of plaintiff Holly, it developed that he knew of this sale, which he claims was without his authority, within five or six days after it was made.   Holly further

testifies that he expected the proceeds of the sale made by defendant would be turned over to him by Mills when the latter received credit therefor, and seems to have continued of that opinion until about the 16th day of the following April, about two months and a half after the sale. At the end of this period of time he came to the conclusion that Mills would not pay him, after Mills had told him that defendant had not paid him the proceeds of the sale, and he came to Denver and called on Campion, defendant's manager, and for the first time informed Campion that he held a chattel mortgage on the property. Upon the second day of the trial Campion was put upon the stand and interrogated by his counsel. Campion was asked if Holly, the plaintiff, had within a few days after defendant received the cattle from Mills, and before about March 1, 1903, notified defendant of this chattel mortgage and made claim to the cattle as included in the mortgage, and had demanded the proceeds of the sale or the value of the cattle or any part of it, whether defendant would and could have protected itself and withheld from Mills the proceeds of the sale and turned them over to Holly. To this question plaintiff objected because no such issue was in the case. Counsel for defendant then asked leave to file an amendment to the answer supported by affidavit. This amendment in substance is that although plaintiff knew within five or six days thereafter that Mills, the mortgagor, had shipped to defendant for sale cattle included within the mortgage, he stood quietly by and gave no notice of any kind thereof to defendant that he claimed any of these cattle or any interest therein, but on the contrary looked to the mortgagor Mills to collect the money from defendant and pay the same to him; that he so remained silent until the 16th day of April, 1903, and until a long time after defendant

had paid Mills the proceeds of the sale of the cattle, and if plaintiff had, within a reasonable time, apprised defendant of his claim, defendant could, and, out of moneys coming into its hands belonging to Mills, would have withheld for plaintiff the value of the shipment. Defendant pleaded this, first, as showing consent and ratification of the sale by the mortgagor, and, second, as an estoppel. Plaintiff objected to the amendment, but upon what grounds the record does not disclose. The court refused to allow the amendment to be filed and also refused to permit the defendant to prove, under the issues made by the original answer, the facts relied upon in the proposed amendment. While the allowance of an amendment to a pleading rests in the sound legal discretion of the trial court and will not ordinarily be set aside by this court, and only in case of abuse, we are clearly of opinion that the trial court abused its discretion in not allowing this amendment to be made. The code favors amendments to pleadings in furtherance of justice. The matters set forth in the proposed amendment were material, and, if established, would be a complete defense to plaintiff's first cause of action. If it be true that plaintiff, within a short time after the receipt of these cattle by defendant, knew that they were a part of the cattle covered by the mortgage and stood silently by until after defendant had paid to Mills the proceeds of the sale, and during this time was relying upon Mills to pay the amount of the mortgage debt out of such proceeds, and did not notify defendant or make any claim to it of an interest in cattle or that he would hold defendant liable therefor, and made no such claim until April 16th following, after Mills got his money, this was an unreasonable delay upon his part, and evidence of acquiescence in the sale, and he should not now be allowed to recover the value of

the cattle from defendant. The affidavit of defendant showed that knowledge of these things did not come to defendant until the time of the trial and a prompt request was made for permission to file the amendment.

- Cases in point that such ruling of the trial court constitute reversible error are: *Belmont Mining Company v. Costigan,* 21 Colo. 471; *Cascade Ice Company v. Water Co.,* 23 Colo. 292; *Tom Boy Gold Mines Co. v. Green,* 11 Col. App. 447; *Autrey v. Bowen,* 7 Col. App. 408.

A late case decided by this court, *Cartwright v. Ruffin,* 43 Colo. 377, 96 Pac. 261, contains a satisfactory discussion concerning the duty of courts to exercise greater liberty in allowing a defendant to amend his answer than in permitting a plaintiff to amend his complaint, and gives cogent reasons for the distinction. See, also, 1 Enc. Pl. & Pr. 518, and notes.

4. The main effort of plaintiff's counsel to sustain the orders of the trial court with respect to the description of the property in the mortgage and the ruling of the court upon the amendment, is directed to the proposition that these rulings, even though irregular and erroneous, were not prejudicial because, under an appropriate issue, the jury found that defendant had actual knowledge of the existence of the mortgage before it received the property. There is such testimony by the mortgagor Mills. All the facts and circumstances, however, tend strongly to discredit his testimony. He laid himself liable to criminal prosecution for selling mortgaged property without the consent of the owner, if such consent was not given, and the jury ought not to have given much credit to what he said. But assuming that there was testimony that defendant, at the time it received the mortgaged property, had actual knowledge of the existence of the mortgage, it by no means

follows that the jury so found in plaintiff's favor. The court did not submit to them in any instruction the legal effect of actual, as distinguished from constructive, knowledge by the defendant of the existence of the mortgage. On the other hand, the instructions which were submitted to the jury upon this feature of the case, being confined exclusively to the effect of the execution and recording of a chattel mortgage, it is probable that their verdict as to this branch of the case was in favor of plaintiff because of the constructive knowledge which defendant had of the lien.

5. In view of another trial we deem it appropriate to say that the court in giving instruction No. 6 was inaccurate in the statement that a conversion of property necessarily occurs where defendant exercises an act of ownership or dominion over plaintiff's property. If this exercise is not inconsistent with plaintiff's right or title, or if plaintiff consents or acquiesces therein, there is no conversion. In instruction No. 7 the court told the jury that a commission house selling mortgaged property is liable to the mortgagee for conversion of such property, though it has no actual knowledge of the mortgage at the time of selling such property. If these are correct as abstract propositions of law, they are misleading under the facts of this case, where there is testimony, which the jury might well believe, that plaintiff consented to, or acquiesced in, the sale. Since the court, in no other instruction, limited or qualified them, the jury were, or might have been, misled.

We also deem it appropriate to say that the court did not sufficiently state to the jury the issues. The case as made by the complaint was sufficiently explained, but the denials and the affirmative defense of the answer were wholly ignored. When the court

attempts to state to the jury the issues raised by the pleadings, it should do so fully and correctly.

6.  As to the second cause of action, we think the judgment is right.  The defendant admits the amount therein sued for and its only objection to the verdict and judgment thereon is that interest was allowed. We think interest was properly allowed.  The only reason given by defendant for refusing to pay the amount claimed at the time it was agreed upon is that plaintiff refused to sign a receipt prepared by it, which, on examination, we find to be somewhat ambiguous and, in one sense, might have been construed as a waiver by plaintiff of all rights to cattle branded with the "7-1" brand.

The judgment is reversed and the cause remanded; further proceedings, if any, to be in accordance with the views herein expressed.  Both parties may amend their pleadings as they may be advised, in harmony with such views.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.