## No. 10,353.

LININGER IMPLEMENT CO. *v.* QUEEN CITY FOUNDRY CO.

Decided June 4, 1923.

Action for damages for conversion of personal property. Judgment of dismissal.

*Affirmed.*

1. WORDS AND PHRASES—*Conversion.* Conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another. A mere breach of contract will not support an action of trover.

2. NONSUIT—*Evidence.* Action on a motion for nonsuit is to be determined from the evidence produced by plaintiff and every reasonable intendment or inference that can be drawn from the same.

3. CONVERSION—*Evidence.* Evidence reviewed and held not to show a conversion.

4. NONSUIT—*When Granted.* Where, if a case had been submitted to a jury and a verdict returned for plaintiff, it would have been the duty of the court to have set it aside, a motion for nonsuit should be granted.

5. CONVERSION—*Commingling of Goods.* An action for conversion for commingling of goods cannot be maintained where plaintiff's consent thereto was given.

6. *Demand.* Evidence reviewed, and held that no demand was made for goods alleged to have been converted.

7. *Demand—Time for Delivery.* One who has to deliver goods on demand, has a reasonable time after demand to comply, and a reasonable time is to be determined from all the facts bearing upon the question.

8. TROVER—*Lien—Tender.* Where a person had a statutory lien on personal property, before the owner could maintain an action for trover, there should be not only a demand and refusal, but a tender of the amount due under the statutory lien.

9.  TENDER—*Conditional.*  A statement of plaintiff in an action for conversion, that there would be money in the bank to pay defendant's claim against the property when he complied with certain conditions, held not to constitute a tender.

10.  CONVERSION—*Compromise—Estoppel.*  In an action for conversion where defendant claimed a lien on the property, plaintiff, after accepting an offer of compromise, was estopped from saying he was not obliged to pay the amount due on the compromise claim, when he demanded delivery.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. M. W. SPAULDING, for plaintiff in error.

Messrs. ROGERS, JOHNSON & FULLER, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS action by the Lininger Implement Company, as plaintiff, against The Queen City Foundry Company, as defendant, would be trover at the common law. Its object is to recover damages for the conversion by the defendant of one hundred and five (105) Giddings beet pullers, the property of the plaintiff. The answer alleges that defendant has always recognized plaintiff's ownership of these beet pullers. They were delivered by the plaintiff to the defendant for reconstruction, and were rebuilt, and, after completion of the work, have always been, and now are, subject to delivery to the plaintiff upon demand, when payment is made for the agreed cost of the work, which constitutes a statutory lien upon the machines. It denies that any legal demand has ever been made upon, or refused by, the defendant. At the close of the plaintiff's evidence the defendant's motion for nonsuit was granted, and the action was dismissed with prejudice.

The defendant is a manufacturer, and the plaintiff is a wholesaler or jobber. In July, 1919, they entered into a

contract whereby the defendant manufacturer gave to the plaintiff jobber the exclusive right of sale of these pullers in certain designated territory in five of our states. The jobber was required to promote sales in this territory, and when it made sales, the manufacturer was notified and shipped the goods direct to the purchasers. The purchasers or the jobber, or perhaps both, were not satisfied with some of the component parts of these pullers, and the jobber wanted certain improvements made upon them and a number of machines of 1919 or earlier models that had been sold to retailers, were returned to the defendant at the plaintiff's request, under an agreement between them, whereby the manufacturer was to make, and the jobber promised to pay a designated price for, certain repairs, changes, alterations, improvements, in fact, a practical rebuilding or rejuvenation thereof so as to bring them up to the latest model of 1920, which the manufacturer had perfected. These machines were returned for this purpose after the close of the selling season of 1919, both parties being desirous of having the pullers converted into the 1920 model ready for the selling season of that year. The jobber says that to convert them into 1920 models it was not necessary to "disassemble", or disconnect, the separate parts, although it was necessary to "disassemble" most of them. The manufacturer, that was to do the rebuilding, says that it was necessary to "disassemble" all of them. As this case is here upon a judgment entered as of nonsuit, at the close of plaintiff's testimony, it will be assumed that its contention, as to this and other controverted facts, is right. There was at first a dispute between the parties as to the amount due defendant from the plaintiff for this work of rebuilding, but after correspondence and conferences between their representatives, the defendant, on November 4, 1920, wrote to plaintiff that, as a settlement of all matters in dispute between them, it would ship on demand of the jobber the one hundred and five (105) 1920 Giddings beet pullers, which it had in storage at its warehouse in Timnath,

Colorado, in consideration of the payment, in cash, of $860.44, which represented the cost of remodeling, and also agreed to release the plaintiff, on the payment of such sum, from any other claims which it held against plaintiff for delivery of beet pullers during 1920. On the 6th of November, Saturday, two days later, the plaintiff wrote a letter to the defendant accepting the terms of the offer of November 4, and stated that there would be on deposit in a bank in Denver, $860.44 which the bank was instructed to pay to defendant upon its compliance with certain conditions specified in a separate letter of the same date. This second letter was received by defendant late in the afternoon of that day. It ordered defendant to load at once in certain cars on the loading switch of the railroad company at Timnath, Colorado, one hundred and five (105) Giddings beet pullers each complete, being the beet pullers mentioned in the defendant's letter of November 4, and to ship the same to the plaintiff at Sidney, Nebraska, and the bank in Denver, in which the money was deposited, would pay the same to defendant when it delivered to the bank bills of lading properly receipted, showing that these pullers were in the cars; which must be loaded not later than November 10, 7 o'clock a. m.; that upon failure of the manufacturer to comply with the terms of these directions, the manufacturer must deposit in the Denver bank the sum of about $6,000, the estimated value of these beet pullers. On November 5, the plaintiff jobber addressed a letter to the Denver bank by which the bank was required to hold on deposit $860.44 to be paid to the manufacturer on the delivery by the latter to the bank of receipted bills of lading showing such shipment, but if the defendant did not deliver these bills of lading to the bank on or before November 9, the deposit was to be returned to the plaintiff. On Monday, November 8, after the receipt of the plaintiff's letter directing the loading and shipment of these pullers, the defendant answered by letter that it was impossible in the circumstances, to load these pullers in two working days, Monday and Tuesday,

which was the time limited by the jobber in its letter of instruction.  The defendant manufacturer further stated that the so-called acceptance by the plaintiff of the defendant's compromise offer of November 4, was not an acceptance at all, but an attempt to impose conditions contrary to the terms of the offer, and contrary to the understanding of the parties and stated that the offer was withdrawn, but if the conditions of the acceptance should be amended to conform to its written offer of November 4, the defendant would carry out such agreement.  At various times thereafter the defendant has stated, and the evidence is not contradicted, that it was willing, within any reasonable time, after demand and upon payment of the stipulated sum for its work, to deliver these beet pullers to the plaintiff.

In plaintiff's opening and closing briefs, of about 200 pages, we find no statement of facts.  It would be difficult, if not impossible, to know from these briefs what the controversy between these parties is, or what the facts are to which correct rules of law are to be applied.  Not every act of interference with the owner's right to personal property is a conversion.  That word has been defined as any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another.  38 Cyc. 2005; *Murphy v. Hobbs,* 8 Colo. 17, 5 Pac. 637; *Omaha & G. S. & R. Co. v. Tabor,* 13 Colo. 41, 54, 21 Pac. 925, 5 L. R. A. 236, 16 Am. St. Rep. 185; *Crosby v. Stratton,* 17 Colo. App. 212, 68 Pac. 130.

A mere breach of contract will not support an action of trover.

The ruling of the court on the defendant's motion for nonsuit is to be determined from the evidence produced by the plaintiff, and every reasonable intendment or inference that can be drawn from the same.  The trial court in ruling upon this motion, said: "There is absolutely not a word or scintilla of evidence to indicate that the defendant in this case ever exercised any dominion over these beet pullers in denial of the plaintiff's rights therein.

Quite the reverse is true. The defendant has always and persistently, so far as the evidence shows, recognized the plaintiff's right to these beet pullers. It never for a moment denied the plaintiff owned the beet pullers and was entitled to them. The only controversy was as to how soon they could be actually delivered." And we might add, as the court further stated, the evidence likewise failed to show that any legal demand had ever been made, or refused, or that there had been a tender of payment of the cost of rebuilding the pullers for which the defendant had a statutory lien.

We have read with care the entire testimony in the case and are thoroughly convinced that the trial court was right in saying that the plaintiff's own evidence conclusively showed that there had been no conversion by the defendant. We go farther and say that had the question been submitted to the jury upon the evidence produced and a verdict had been returned for the plaintiff, it should have been set aside. The summary of the evidence given in the foregoing statement, of itself, is a sufficient and complete answer to the contention of the plaintiff that the case should have gone to the jury. No discussion of the law of the case is necessary. Even conceding every legal proposition advanced by the plaintiff, the undisputed facts are with the defendant. The defendant was lawfully in possession of these beet pullers. They were delivered to the defendant upon plaintiff's orders for a special purpose, which was to convert them into the latest or 1920 model for sale, as such, during 1920 and subsequent seasons. It was impossible to return or deliver them to the plaintiff as the identical property, or as the same model or kind of pullers they were when the defendant received them. The very purpose for which plaintiff delivered them contemplated that when the work of rebuilding was done, they would be different from, and other than, the pullers which the defendant received. It was necessary, even according to the plaintiff's own admission, to take out or disconnect some of the parts of which the pullers

were composed, to paint them, and to insert other and different pieces or elements of a complete machine. The plaintiff consented to these alterations and changes. Indeed, the contract could not be performed by the defendant without producing another and, in important respects a different implement. There was not, and could not be, in such circumstances, a commingling of goods which would constitute a conversion by reason of the defendant's inability to return the identical articles. If, however, there was any commingling, in the sense contended for by the plaintiff, its consent thereto was given, and its acquiescence therein was shown. This fact alone would defeat an action of trover for a commingling of plaintiff's goods with those of the defendant. 38 Cyc. 2009.

The evidence shows that no legal demand was ever made by the plaintiff for the return of its property, and no refusal of any such demand. The compromise agreement of November 6, provided that the defendant, upon demand, and upon payment of a sum agreed upon by the parties, would deliver these pullers. It is undisputed that both plaintiff and defendant knew at this time that they were not assembled, that is, the different parts which composed the complete pullers had been disconnected, or taken apart, and some of these parts were not even painted, which was required by the contract of rebuilding. In their disconnected condition they were, to the knowledge of both parties, in the defendant's warehouse at Timnath, about 70 miles from the City of Denver. On the very day that the plaintiff says it accepted by letter defendant's offer of compromise at Denver, which was November 6, Saturday, by a separate letter delivered late in the afternoon of that day, it demanded of the defendant that it load all these beet pullers, each complete, that is, each assembled and painted and in the condition required by the contract of rebuilding, upon the cars at Timnath not later than 7 o'clock on the following Wednesday morning. Even if it be conceded that this order constituted a legal

demand the undisputed evidence is that it was impossible to comply therewith within the time fixed, or any less time than 30 days, and that the plaintiff's manager knew that the demand was unreasonable and impossible of fulfillment. It further appears from the evidence that the plaintiff would not have been injured in any particular had the delivery not been made for thirty or ninety days, as the selling season was then over. The defendant, while required to deliver on demand, had a reasonable time thereafter within which to comply, and a reasonable time is to be determined from all the facts bearing upon that question. The court was right in holding that there was no legal demand, for the reasons assigned.

This property having come into defendant's possession lawfully, to sustain an action of trover there must be not only a demand and a refusal, but also a tender, of the amount due on the statutory lien which defendant had on this property. 38 Cyc. 2032, 2058. There was no tender of the amount of the lien which plaintiff recognized. The statement in plaintiff's letter that there was, or would be, money on deposit in a Denver bank, which was authorized to hand over the same to the defendant when it produced receipted bills of lading, was not a tender at all. In effect it was no more than a statement by the plaintiff that when the defendant had produced receipted bills of lading to the plaintiff itself, the plaintiff would give its check for the amount of the lien. Aside from this, it is significant as throwing light upon the lack of good faith of the plaintiff, that, in its letter of instructions to the bank, it distinctly said that if the receipted bills of lading were not delivered to the bank on or before November 9, the deposit was to be returned to the plaintiff and not given to the defendant, although, according to the alleged demand of the plaintiff for the loading of these pullers, the defendant was not required to complete the loading until 7 o'clock in the forenoon of November 10. The defendant would not be likely to receive bills of lading from the railroad company until the loading was finished, and even if the load-

ing was finished as ordered, there could be no money in the bank to be turned over.

Plaintiff's contention that the defendant waived the tender, because the amount to which it claimed a lien was in part for work upon other beet pullers, and that the alleged refusal was on other grounds is not well taken. The plaintiff alleges that it accepted the defendant's offer of November 4, and, if that is true, such acceptance estops the plaintiff to say that it was not, when it demanded delivery, obliged to pay the amount of the lien. Payment was the condition of the compromise contract upon which the right to a delivery depended. According to plaintiff's own admission, there was a considerable sum due for defendant's work upon these very pullers for which it had a statutory lien and it was necessary, to support this action, to tender the exact amount due, which plaintiff failed to do.

We entertain no doubt whatever about the correctness of the rulings of the trial court. Its judgment is accordingly affirmed.