No. 12,098.

PENNSYLVANIA FIRE INSURANCE CO. *v.* LEVY.

Decided May 6, 1929.

Mr. S. M. TRUE, for plaintiff in error.

Mr. IRA C. ROTHGERBER, Mr. WALTER M. APPEL, for defendant in error.

*Department One.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THE parties are referred to as aligned at the trial. Levy, plaintiff below, brought an action in trover against the Pennsylvania Fire Insurance Company for the conversion by defendant of plaintiff's automobile, and recovered actual and exemplary damages. Defendant brings the case here for review.

About March 5, 1927, Levy bought the automobile, which was then new, and simultaneously the company insured it in Levy's favor, against theft. On or about June 16, 1927, the car was stolen; the insurance policy

was then in full force and effect. On or about July 7, 1927, the car was recovered by an officer and delivered to the company. It was in a badly damaged condition when recovered, which necessitated repairs. The company retained possession, stored it in a Denver garage, and left orders there not to let it go without permission from the company.

The parties were unable to agree on the amount of the damages, and the policy provides that in such event there may be an appraisal on the written request of either party. The language of the instrument in this respect is as follows: "In case the insured and this company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen (15) days to agree upon such umpire, then, on the request of the insured or this company, such umpire shall be selected by a judge of a court of record in the county and state in which the appraisal is pending. The appraisers shall then appraise the loss and damage stating separately sound value and loss or damage; and failing to agree, shall submit their differences only, to the umpire. An award in writing of any two, when filed with this company, shall determine the amount of sound value and loss or damage. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally."

The value of the automobile is not disputed. The court instructed the jury to return a verdict in the amount of such value as actual damages, and to ascertain the exemplary damages to be awarded, if any. Both directions were complied with and judgment followed.

The company has never denied Levy's ownership, but it has denied his right of possession, except under the conditions more fully stated in the opinion. Levy is a business man, and, before the car was stolen, used it in his work, which required trips to different parts of the

state. He made repeated efforts to get a settlement; he agreed to the appointment of appraisers; he tried to make his selection with a view to satisfying the company as to their competency and disinterestedness. Although required to name only one, the company forced him to name three, successively, before it acquiesced in his final selection. The company made no objection to the first two appraisers selected by Levy until after it became apparent that their appraisement of the damage was greater than the company was willing to pay. The company appointed one Harrison, who had to be out of town for two or three weeks; his estimate coincided with that of the first appraiser selected by Levy, but the company later declared that Harrison was merely an ''estimator,'' and that it (the company) was not bound thereby. The appraisers were unable to agree on an umpire, and pursuant to the policy, the Honorable George W. Luxford, judge of the county court of the City and County of Denver, selected one, but the company objected to him. After Levy had tried for about a month to get a settlement, he demanded of defendant's representative possession of the car, but was told that it was out of his hands, but if their attorney would turn over the car, it was all right with the insurance company. Levy then called their attorney, who told him, ''Certainly, you can have your car, if you will accept our terms of settlement; otherwise not.'' Levy refused, and brought this action a day or two after the demand. The attorney for the company then transmitted a letter to Levy demanding the selection of appraisers according to the policy, although appraisers had been working before. Nothing was said in this letter about returning the car. On October 14, 1927, defendant filed its answer, in which it denied plaintiff's right of possession of the automobile, but made a formal offer to return it, and to pay for loss and damage, which defendant laid in a sum less than any appraisement. On November 26, 1927, the company reported to Levy that an appraisement had been made, and offered

to pay the amount there fixed and to return the car. No appraiser for Levy signed the award. After the refusal in August, 1927, to return the car, the record does not show that any offer was made to return it until defendant's answer filed two months later. In the meantime, Levy had bought another car, and he refused defendant's belated offers.

1. The contentions of the company may be summarized in the following language of its counsel, contained in his brief: "In this particular case, the company did what it had a perfect right to do; that is, keep the car until the damage had been ascertained by appraisal and then exercising its right to return the stolen car with full payment for damage done by reason of its theft." This statement is too broad. The contract does not provide such a calendar period, coextensive with the ascertainment by appraisal of the loss, within which to return the car. And the company voluntarily cut itself off from the benefits of such contractual rights as it possessed, whatever they were, by arbitrarily refusing to return the automobile unless and until Levy would accept its terms of settlement. This constituted a conversion. The facts bring themselves within the definition of the word as settled by our previous decisions. As we said in *Lininger Implement Co. v. Queen City Foundry Co.,* 73 Colo. 412, 416, 216 Pac. 527, 529, "Not every act of interference with the owner's right to personal property is a conversion. That word has been defined as any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." 38 Cyc. 2005; *Murphy v. Hobbs,* 8 Colo. 17, 5 Pac. 637; *Omaha & G. S. & R. Co. v. Tabor,* 13 Colo. 41, 54, 21 Pac. 925, 5 L. R. A. 236, 16 Am. St. Rep. 185; *Crosby v. Stratton,* 17 Colo. App. 212, 68 Pac. 130; *Minchew v. West,* 78 Colo. 254, 256, 241 Pac. 541.

2. The responsibilities of the company in the premises were in the nature of those of a bailee. It voluntarily and lawfully assumed the bailment, but its subsequent

actions were inconsistent with the object or purpose thereof. The insured was indemnified by the insurance contract against a specified peril, namely, loss by theft, but when the company held the car to be ransomed on its own terms, the insured was in about as bad a way, and as effectively deprived of his property, as if it had not been recovered at all. There is no provision in the policy which permits the company to retain the car indefinitely, and in the absence of a specified time agreed upon for the return of an automobile from the insurer to the insured, we are in accord with that which is said in *Martoni v. Mass. Fire & Marine Ins. Co.,* 106 Conn. 519, 523, 138 Atl. 462, 464: ''Under such circumstances the law would imply that the agreement was for a return within a reasonable time  *  *  *.  Otherwise the insurer might return the car years after the theft.'' Defendant's position is not aided in the instant case by another clause in the policy that the damage is not payable until 60 days after an award has been made by the appraisers, if an appraisal is demanded. This does not affect defendant's duty to act expeditiously. It does not give it the right to create unnecessary delays, nor to hold the car for the purposes of forcing a settlement on terms dictated by the insurer.

3. The company had the right to retain possession, as we have said, for a reasonable time, in order to ascertain Levy's loss and damage, but ''reasonable time'' is a relative term, and what would be reasonable in a given case might be unreasonable under a different state of facts. We believe that any automobile mechanic or repairer would soon have to go out of business for lack of customers if he could do no better than to wait from summer until winter to ascertain the extent of damage to a car. And aside from the direct refusal of the attorney for the company to deliver unless the insured agreed to its terms, there is still more to be considered. We refer to the aggravating circumstances of captious objections and stumbling blocks thrown by the company in the way

of a proper ascertainment of the loss. They were quite sufficient to justify only one inference, namely, that it sought by these means to wear out the patience of the insured, and to deprive him of the use of his property, so as to eventually compel him to settle on the company's own terms. An automobile is a daily necessity in modern business life. It was so with Levy, and he was finally forced to buy a new car while the company procrastinated and delivered its unlawful ultimatum. As said in *O'Connor v. Maryland Motor Ins. Co.*, 287 Ill. 204, 210, 122 N. E. 489, 3 A. L. R. 787, ''Automobiles are so generally used in business affairs and other activities of life that public policy requires that a person having a theft policy should not be compelled to wait indefinitely on the chance of having the stolen automobile recovered or be compelled to incur the expense of buying a new one and thereafter taking the old one back if recovered.'' Another ironical circumstance present in the instant case was that while Levy was being deprived of the use of the automobile, he was notified by city authorities of a violation of traffic regulations by some one driving a car that bore the license number of the one withheld by the company, evidently the same car. The company kept it from July until the latter part of November, a time when many dealers are ready either to announce or distribute their next year's models. The actions of the company that we have mentioned inevitably removed consideration of the case from the realm of contract to tort. It dispenses with a full treatment of the matter as a purely contractual obligation.

4. Error is assigned on the ground that the court erred in submitting to the jury the question of exemplary damages. Section 6307, C. L. 1921, reads: ''That in all civil actions in which damages shall be assessed by a jury for a wrong done to the person, or to personal or real property, and the injury complained of shall have been attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party's

rights and feelings, such jury may, in addition to actual damages sustained by such party, award him reasonable exemplary damages.''

Plaintiff's pleading and proof brought his case within the purview of the above statute, and thus entitled him to exemplary damages. *Clark v. Small,* 80 Colo. 227, 229, 250 Pac. 385. The refusal of the insurance company, by its attorney, to release or deliver plaintiff's car unless he accepted defendant' terms of settlement, in itself was a wanton and reckless disregard of plaintiff's rights.

Defendant's motion for a new trial and assignment of errors do not raise any question as to the amount or excessiveness of the jury's award of exemplary damages, so this does not require discussion.

Judgment affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE ALTER and MR. JUSTICE CAMPBELL concur.