[Civ. No. 7500. First Appellate District, Division Two.—March 31, 1931.]

HANNAH A. KALLEM, Appellant, v. FREDERIC VINCENT et al., Respondents.

128

Joseph F. O'Malley for Appellant.

Joseph McInerney, Henry C. Clausen and Shortridge & McInerney for Respondents.

STURTEVANT, J.—The plaintiff commenced an action in conversion against the defendants. Later she amended her complaint. The defendants appeared and answered the complaint as amended and the trial was had before the trial court sitting with a jury. At the end of the plaintiff's case the defendants made a motion for a nonsuit. The court made an order granting the motion and the plaintiff has appealed, bringing up typewritten transcripts. In plaintiff's amended complaint she alleged that the defendants were partners transacting a general stock brokerage business in San Francisco; that on the twenty-first day of July, 1926, plaintiff was the owner of sixty units of the stock of the National Ice Cream Company; that each unit consisted of one share of preferred stock of the value of $100 per share and one share of common stock of no par value; that said stock was of the value of $6,000; that on July 21, 1926, plaintiff agreed to purchase from defendants forty

additional units of the same stock and agreed to pay $4,000 therefor; that thereupon she executed her promissory note payable six months after date for the sum of $4,000, bearing interest at eight per cent per annum; that thereafter she delivered to defendants said promissory note; that thereafter on August 4, 1926, defendants converted said hundred units to their own use; and "That plaintiff has made demand upon said defendants for the return of said units of said corporation stock, but to return the same defendants have refused and still refuse to return or deliver to said plaintiff the said one hundred units of said corporation stock." The defendants interposed several denials, but they did not deny the paragraph just quoted. Excepting the allegation of conversion the plaintiff introduced evidence tending to support each and all of her allegations. In doing so it transpired that when she executed the promissory note in the sum of $4,000 she brought forward her certificates evidencing the said sixty units, indorsed the certificates in blank, and delivered them to the defendants to hold as security for the payment of the above-mentioned promissory note. After the defendants received the certificates for the said sixty shares the defendants held, together with said certificates, many other certificates evidencing stock in the same corporation. Of the stock represented by said certificates the defendants owned several hundred shares in their own right. On August 3, 1926, the defendants received an order for 100 units. That order came from H. D. McCoy. The defendants thereupon sold and delivered to McCoy the certificates for sixty shares so delivered to the defendants by the plaintiff and certain other certificates making up the total of 100 units as contained in the order of McCoy. At no time did the plaintiff pay any of the principal or interest represented by the said promissory note. About March 20, 1928, the plaintiff borrowed from the defendants $2,000 and thereupon a new note dated March 20, 1928, for the principal sum of $6,000 bearing interest at the rate of seven per cent per annum was executed by the plaintiff to the defendants. It was agreed that the note last mentioned was to take the place of the $4,000 note and was also to evidence the $2,000 so borrowed from the defendants by the plaintiff. The note in form is a collateral note and recites that it was secured by 100 units of the stock of the cor-

poration above mentioned. On May 18, 1928, no part of the principal or interest had been paid on the note last mentioned. On that date the defendants wrote to plaintiff asking her to call and settle the National Ice Cream account. Later that was done. At the time of the settlement the agreed market value of the said units was $65 per share. The stock for which the plaintiff had agreed to pay $4,000 was worth only $2,600—a loss of $1400. The defendants added to the $1400, $2,000 for moneys loaned, making a charge of $3,400. Estimated in the same manner the plaintiff's sixty shares were then worth $3,900, deducting from that sum $3,400, the balance owing to the plaintiff was $500, which the defendants paid to the plaintiff. At the same time the defendants loaned her $4,000 on a mortgage on real estate on property down the peninsula, and said loan is now outstanding and unpaid.

The plaintiff calls to our attention that on August 4, 1926, the date when the defendants sold her sixty units, the plaintiff's note was not due and that she was not in default in either principal or interest, and that the act of making said sale was in and of itself a conversion. The defendants reply that the evidence shows that at the time the defendants sold the certificates which they had received from the plaintiff the defendants owned and had on hand a large quantity of the same identical securities and at all times were ready, able and willing to deliver to the plaintiff the full sum of 100 units whenever the plaintiff should have completed making her payments and therefore no conversion took place. They cite *Thompson* v. *Toland,* 48 Cal. 99, and *Bell* v. *Bank of California,* 153 Cal. 234 [94 Pac. 889], sustaining their contention. The answer is full and complete.

It appears, therefore, that on the theory of an overt act of conversion, the plaintiff had not made a *prima facie* case. But she now contends that because she had alleged that she had made a demand and the demand was refused, there was a constructive conversion. This second theory ignores the facts concerning the plaintiff's continued indebtedness to the defendants. The plaintiff did not allege and at the trial she did not present any evidence to the effect that when she made her alleged demand she tendered, or at any time tendered, to the defendants any part or portion of her indebtedness. Such a demand unaccompanied

by a legal tender would not support an action in conversion. (38 Cyc. 2058; *Lininger Imp. Co.* v. *Queen City Foundry Co.*, 73 Colo. 412 [216 Pac. 527, 530].)

■ It is contended that the motion for a nonsuit was not sufficiently specific to support the order made by the trial court. The motion was made in open court. It was there argued. No contention was made that it was not sufficiently specific. The language of the motion appears in the record. After reading it and after reading the objection which is now made by the plaintiff we are unable to say the defendants should have made their motion any more specific.

■ Finally the plaintiff asserts that on a motion for a nonsuit the evidence must be taken most strongly against the defendant, and if the plaintiff has produced proof sufficient to make out a *prima facie* case under the allegations of his complaint, the motion if made on the close of his case, should be denied. (*In re Daly*, 15 Cal. App. 331 [114 Pac. 787].) Conceding such to be the rule the first question is whether the plaintiff had made out a *prima facie* case. She claims she had on the grounds that she had shown that the defendants' acts were (1) an illegal assumption of ownership and (2) an illegal use or misuser (*Glaze* v. *McMillan*, 7 Port. (Ala.) 279). Applying the first assignment to the sixty units the evidence was all one way and showed no illegal assumption of ownership (*Thompson* v. *Toland*, 48 Cal. 99). As to use or misuse there was no evidence on the subject. As to the forty units there was no evidence of any conversion under either assignment.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 30, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 28, 1931.