No. 12,465.

Lutz *v.* Becker.
(2 P. [2d] 1081)

Decided July 6, 1931. Rehearing denied September 14, 1931.

Mr. H. Berman, Mr. Fred N. Holland, for plaintiff in error.

Mr. HUBERT L. SHATTUCK, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

JENNIE R. Becker, defendant in error, hereinafter referred to as plaintiff, brought an action against B. Lutz, plaintiff in error, hereinafter referred to as defendant, to recover damages for the conversion of certain property. Trial was had to the court without the intervention of a jury; certain findings of fact were made, and judgment rendered for plaintiff. Defendant prosecutes this writ, assigning as error the insufficiency of the evidence to warrant the court in finding defendant guilty of conversion.

Defendant foreclosed a chattel mortgage on certain personal property in an apartment house owned and operated by plaintiff's sister, and took possession of all the chattels therein; plaintiff had a bill of sale, dated subsequent to the chattel mortgage, for certain personal property in the house, and claimed to own other personal property therein which was not included in the chattel mortgage; she demanded of defendant possession of such property as she claimed to own, which demand, she alleges, was refused, and this action resulted.

Defendant, in his answer and at the trial, disavowed any intention of claiming title to or retaining possession of any personal property except such to which he was entitled by virtue of his chattel mortgage, but admitted, at the trial, that he had taken possession of the apartment house under a foreclosure sale, and, also, that he had taken possession of all the personalty therein, and had continuously thereafter used all the furniture and other personal property in conducting his apartment house business. The portion of defendant's answer in which a denial of the conversion is attempted, reads:

"* * * defendant alleges that plaintiff has demanded of

defendant certain chattels and that *plaintiff* always has and still does offer to deliver to plaintiff *whatever* part of the chattels there are located in said premises, as aforesaid, *which do not belong to the defendant."* (Italics ours.)

The defendant, at the trial, testified:

"Q. Whatever furniture there was there when you took possession you have continued to use from that time until this? A. Yes sir.

"Q. And you claimed it as your own? A. Yes sir.

"Q. Now, at that time. [when possession was taken] you believed that this chattel mortgage covered all of the furniture in that apartment house, didn't you? A. No.

"Q. Now, you have used that furniture and your tenants have used it from May 13th down to now, haven't they? A. Yes sir."

Defendant prepared the chattel mortgage, under the foreclosure of which he claimed title to all the furniture and other chattels in the apartment house composed of eighteen apartments; in this mortgage the furniture and other personal property in ten designated apartments is specifically described, while in seven of the remaining apartments the only furniture designated is: "All Beds, Spring and Mattress Linoleum, Gas Range, & Ice Box, containing in Apts. * * *."

Plaintiff's evidence is to the effect that, when possession of the apartment house was taken by defendant, seven apartments were completely furnished with articles other than those upon which defendant had a chattel mortgage, which articles were purchased with money provided by plaintiff after the date of the chattel mortgage, and for which plaintiff had a bill of sale; that defendant commingled this furniture, to which he had no claim, with his furniture, so that it was difficult to segregate the same, and forbade plaintiff the right to come on the premises and identify her property; that defendant, at the repeated solicitation and insistence of plaintiff, made repeated appointments to go to the apartment house with

her and her attorney to identify and remove her property, but failed on every occasion except one to keep the appointments; that plaintiff's attorney could not identify her property because the same had been moved by defendant from the apartments in which it was left; that defendant disputed plaintiff's title, and under a general clause in the chattel mortgage, claimed at first to own all the furniture, and it was only upon plaintiff's production of the bill of sale and receipted bills for the same, that defendant ever conceded that plaintiff might have some right there; that the offer of defendant to return the property to which plaintiff claimed title came after the action was commenced. Plaintiff's attorney, in testifying, stated: ''Q. All that is more or less a conclusion; but I want to get this straight, that he neither refused to give you anything nor did he pick it up and hand it to you, but he said, I have got lots of furniture, take whatever you want, or something like that? A. He just simply said if you can prove title to anything that is in the rooming house I have got plenty of stuff in the store room, or, I have got all kinds of furniture. But he never set the stuff out and he never indicated to me, or intimated that I could get it or where I could get it or where it was, and it was all mixed up with his stuff so that I could not tell one thing from another.''

A careful reading of defendant's testimony convinces us that it lacked the good faith and fairness that should characterize it, and this was evidently the conclusion of the trial judge, for, had he believed defendant, it would have been impossible for him to have rendered a judgment against him. The trial judge, in disposing of the motion for a nonsuit, said, inter alia: ''To go through the idle ceremony of saying you can have the goods but not delivering them, not offering to segregate them, using them, shifting them about in the rooms, it is pure sophistry and does not fool the court nor anybody else where a man says, take your goods, but himself keeps them.''

This comment by the trial court implies that the offer of the defendant was not made in good faith, and that, in fact, he never made an honest attempt or effort to restore to plaintiff the property which he retained in his possession and use, and which he admits did not belong to him.

█ Conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another: *Lininger Implement Co. v. Foundry Co.,* 73 Colo. 412, 416, 216 Pac. 527; *Minchew v. West,* 78 Colo. 254, 256, 241 Pac. 541.

█ The finding of the trial court, at the conclusion of all the evidence was: ''1. That demand was made by plaintiff of the defendant for the return of the goods converted on to-wit June 15, 1926, which demand had never been complied with by the *plaintiff,* who, while offering, so it is said, to return said goods, has never done so, has retained possession of them, commingled them with the goods of which possession was taken under such chattel mortgage and has apparently moved them in and about the various apartments, exercised dominion and control over them, and as the owner of the real estate has rented all of the apartments together with the contents thereof for about three years last past.'' * * *

The answer itself tendered an issue of ownership, and there was no such good faith displayed by the defendant to warrant the court in assuming that this feigned offer to return the goods, if the ownership thereof was proven, was a genuine offer. When one admittedly has in his possession goods and chattels belonging to another, something more than a mere offer to permit the owner to repossess himself of his own property is necessary, if he desires to avoid an action in conversion for damages.

█ The evidence before the trial court was disputed in every important particular, and the trial judge, with the advantage of seeing the witnesses and hearing them testify, observing their demeanor and attitude, found for the plaintiff. Under these circumstances we will not dis-

turb the judgment, when there is sufficient evidence to support it.

Judgment affirmed.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE HILLIARD, dissenting.

I am of opinion the judgment should be reversed. It appears that the plaintiff, claiming to be the owner of certain chattels in the possession of the defendant, and similar in kind to other chattels in his possession, commenced this action in conversion. The court found for the plaintiff, awarded damages and entered judgment; and the defendant prosecuted this writ, the substance of his assignments of error being that the evidence fails to establish conversion.

It further appears that prior to 1925, and thereafter for a period, a Mrs. Schultz, sister of the plaintiff, was the owner of an apartment building in Denver. It was mortgaged to a Denver bank for some $24,000. During 1925, the defendant loaned $8,000 to Mrs. Schultz, taking a second mortgage. The furnishings of the apartment, belonging to Mrs. Schultz, were mortgaged to one Swedlow. The bank foreclosed its mortgage, the defendant redeemed therefrom, and subsequently became the owner of the realty. Mrs. Schultz had also, before the bank foreclosure, become in default under the Swedlow mortgage and the defendant loaned her money to take it up besides an additional sum, to secure which he took a chattel mortgage in his favor on the furnishings.

When the defendant became the owner of the premises he demanded possession thereof, which was refused, as was also his demand for possession of the chattels, based on default in payment of his mortgage thereon. He brought an action of unlawful detainer to obtain possession of the real estate, and the code action for possession, commonly styled replevin, of the chattels. The latter action was never tried; the former was decided in

his favor, and Mrs. Schultz was dispossessed by the sheriff. As a result of this ouster the defendant came into possession of both the real estate and the mortgaged chattels. Some time thereafter the plaintiff asserted that among the chattels so taken were some belonging to her and not included in the mortgage, and out of her efforts to obtain them this action arose.

There is no actual conflict of testimony as to what occurred. Incidental to acquiring possession of the real estate, done by orderly process of law, the defendant unwittingly became possessed of goods claimed by the plaintiff. When the plaintiff asserted ownership of the goods he disclaimed any interest in, title to, or desire to exercise dominion over them. In this situation the plaintiff, through an agent, demanded that the defendant assume the responsibility of segregating and delivering to her the property involved, while the defendant insisted that the plaintiff should identify her goods—there was difficulty, it seems, of identification by either party—and remove them. No effort was made by the plaintiff to point out or identify the goods she claimed until after June 15, 1926, the day on which she commenced her action. This is borne out by the testimony of counsel for the plaintiff which relates to conversations between counsel and the late Daniel L. Webb, then attorney for the defendant, and was elicited under cross-examination.

"Q. Isn't it a fact that there had been no definite refusal, or no refusal at all, prior to the time that this suit was brought by Mr. Lutz or Mr. Webb to give up that furniture if she could tell anybody which was hers? A. Well, I always thought that the shoe was on the other foot; I thought that it was up to him, if he had taken this furniture it was up to him to set it out, it was not up to her to go to his place after she had been thrown out and make any further demands. He had taken possession of it and was holding it and using it, and it was his business to set it out if it was not his and he never did anything; just said if it was hers, let her come and get it.

"We tried a great many times to get Mr. Lutz to come up there to the house. I have no recollection of his ever having been in my office. I remember being in his office a number of times. I met him at the apartment house once and told him it was impossible for me to identify the stuff unless it was in the apartment house where it was listed, and we tried repeatedly to get Mrs. Schultz and Mrs. Becker and him together, and they would be there and would telephone for him and he would be off somewhere else, and we never got him there.

"Q. Did you ever bring Mrs. Becker up there in an effort for her to decide which was hers? A. Yes, I cannot remember the date. It was all after the suit was brought, it was a long time after the suit was brought.

"Q. You failed to bring her up there after the demands and before the suit was brought, in an effort to have her point out what belonged to her, did you? A. I don't think that was ever done. I think it was after the suit was brought.

"Q. You would not bring her up there before? A. I would have met her any time; they were just clamoring for this stuff all the time and pounding me on the back all the time to do something, but I could not get anywhere.

"I don't think that we went up there before June 15th, 1926, to point out what was hers.

"Q. Did you see these apartments that are listed in this complaint? A. My recollection is that we went into one or two of them, and we found that things that were there did not answer the description in the least.

"I cannot tell when we went up there. It was a long time after suit was brought. I think we went into three apartments, and found what appeared to be the brass bed that was listed down in the basement. We did not go far until we saw that the stuff that was in the apartments that we were in was not the stuff that was listed on that list at all, and I had no way of telling what anything was if it was not in the apartment where it was listed. I am

not sure that we even went into the basement. I think we went into the storeroom. I haven't a very distinct recollection as to what we saw there.

"I went far enough to satisfy myself and Mr. Lutz that it was impossible for us to get out and brand anything up there without having somebody that knew the animal when they looked it in the face.

"Q. It was just as impossible for him as it was for you, wasn't it? A. Well, he said so, that is all I know."

Such being the facts, I am of opinion that the defendant was not guilty of conversion. Conversion, as was held in *Pennsylvania Fire Insurance Co. v. Levy*, 85 Colo. 565, 569, 277 Pac. 779, 780, is "any distinct, unauthorized act of dominion * * * exercised by one person over personal property belonging to another." Judge Cooley (Torts, 3d Ed., p. 859) says it is "any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, * * *" but (p. 861), "The act must * * * be intended, and not merely accidental or negligent." In *Lininger Implement Co. v. Foundry Co.*, 73 Colo. 412, 416, 216 Pac. 527, 529, it was said, "Not every act of interference with the owner's right to personal property is a conversion;" and in *Sigel-Campion Co. v. Holly*, 44 Colo. 580, 589, 101 Pac. 68, 72, it was decided, in considering the result of exercising dominion over another's chattels, that "if this exercise is not inconsistent with plaintiff's right or title * * * there is no conversion."

*Butler v. Jones*, 80 Ala. 436, 2 So. 300, is a case of similar facts and seems persuasive on the point here involved. There one Howard had borrowed office furniture and was using it at the time of his death. His landlord, to whom he was indebted for rent, was in possession of the furniture and when an agent of the owner demanded it the landlord inquired if the agent knew and could point out the things belonging to his principal. The reply was negative and the landlord said? "Let Mr. Jones, or someone who knows the things, come and get

them,'' and asserted he would hold whatever belonged to Howard for the rent. Jones, in this state of facts, brought trover, but the Alabama court held that the refusal was not absolute, but qualified and conditional, and, under the circumstances, reasonable and justifiable, citing *Green v. Dunn*, 3 Campbell 316. In that case the defendant, on taking possession of premises he had leased, found timber left there by a former tenant. The tenant demanded the timber and the defendant replied: ''If you will bring anyone to prove that it is your property I will give it you, and not else.'' And this was held to be a reasonable and qualified refusal, and not to constitute conversion.

The judgment of the trial court was based—entirely, I believe—on the rule pronounced in *Meek v. Smith*, 59 Colo. 461, 149 Pac. 627. There a mob took forcible possession of Smith's printing plant and drove her out of town. The defendants, members of the mob, subsequently offered to return the goods, but this was held to be of no effect for clearly the conversion was complete when the forcible possession was taken. The learned trial judge who heard the case at bar must have misapprehended the rule of the Meek case, for it seems plain to me it has no application to the facts here.

The other cases depended upon by counsel for plaintiff likewise rest upon different facts; in them either the taking was wrongful or the subsequent claims were of ownership and amounted to wrongful dominion. Here, I think, the contrary appears; the possession was innocent and the subsequent retention justifiable.